## Nicholson, Appellant, *v.* Zoning Board of Adjustment.

Argued January 10, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*John F. Stine, Jr.*, with him *W. F. Steigerwalt*, for appellants.

*Harry A. Dower*, with him *James D. Christie, Perkins, Twining & Dower*, and *George H. Sacks*, City Solicitor, for appellee.

OPINION BY MR. JUSTICE CHIDSEY:

This is an appeal from the order of the court below affirming the action of the Zoning Board of Adjustment of the City of Allentown. The owner of the premises

involved, Terminals, Inc., and its lessee, Modern Transfer Company, determined by the court below to be the real party in interest, sought to use two adjacent tracts of land, separated by an unopened alley, which for convenience will be respectively designated as Tracts I and II,[1] for the parking and storage of tractors, trailers, trucks and other motor vehicles. Tract I is located in an area zoned Business B, while Tract II is located in a district zoned B Residential. The Board, after a public hearing, found that the proposed use was a permitted use within a B Business District, and accordingly issued a permit for Tract I. It also found that an unnecessary hardship would result if Modern Transfer was prohibited from using Tract II for the requested use, and granted a variance from the ordinance for that tract. The court below, without taking any additional testimony, affirmed the Board's action. Residents of the immediate neighborhood have appealed.

Both Tract I and II are 250′ in length and 125′ in width and are bounded on the north by Tilghman Street and on the south by Dent Street. They are separated by an unopened alley twenty feet in width, known as Meade Street. Tract I, the westerly lot, fronts on Maxwell Street, while Tract II, the easterly

---

[1] Tract I is designated as 617-35 N. Maxwell Street. Terminals owns 623-35 which is 175′ in length and 125′ in width and has entered into an agreement of sale to purchase 617-21 which is 75′ in length and 125′ in width from Harry L. Kolb. Tract II is designated as 618-36 N. Nelson Street. Terminals owns 618-26 which is 125′ in length and 125′ in width and part of 630, and all of 632-36 which is 85′ in length and 125′ in width. Terminals has entered into an agreement of sale, conditioned on the outcome of this appeal, to purchase 628 and part of 630 from Edward J. Rau. Kolb and Rau joined with Terminals in applying for the requested use. Both tracts are vacant, except for one dwelling located on 628 N. Nelson Street which is the home of the present owner, Edward J. Rau.

lot, fronts on Nelson Street. Dent Street, the southern boundary for both lots, extends only from Maxwell to Nelson Streets.

From at least five blocks west of Meade Street, the dividing line between the residential and business districts is Tilghman Street, the northern boundary of both tracts. To the north of Tilghman, the area is zoned residential, while on the south, the area is zoned commercial. The line separating the commercial and residential districts after thus running east along Tilghman to Meade, the unopened alley separating the two tracts, then turns directly south along Meade Street to Dent Street, the southern boundary of both tracts, where it again turns and continues in an easterly direction along Dent Street to Nelson Street. It then continues in a slightly northeasterly direction for at least another five or six blocks. Since the dividing line between the commercial and residential districts runs south along Meade Street between Tilghman and Dent, and since this is also the dividing line between the two tracts, it is apparent that Tract I is in the commercial or business district, while Tract II is in the residential district.

The appellant objectors contend that the Zoning Board of Adjustment committed an error of law in finding that the storage and parking of trucks, trailers, tractors and other motor vehicles was a permissible use in a B Business District, and in issuing a permit for that use as to Tract I, and that the granting of a variance for the same use as to Tract II constituted a "manifest and flagrant" abuse of discretion. Appellants also argued that Modern Transfer Company, determined by the court below to be the real party in interest, had no right to apply for a variance since it was the lessee of the two tracts, and not the owner, and that a tenant cannot be considered as a "party ag-

grieved" to support an appeal to the zoning board from an adverse decision of a zoning official. In addition to the fact that Terminals, Inc. was both the applicant and appellant to the Board on the record, we have recently held in *Richman v. Zoning Board of Adjustment,* 391 Pa. 254, 137 A. 2d 280, that a tenant does occupy a status which permits him to apply for a variance and that he is a "party aggrieved" within the meaning of that term as used in the Enabling Acts and ordinances enacted pursuant to them. We therefore find no merit in this contention.

In cases of this nature, our review is as on certiorari in its broadest sense, and we examine the record to see whether there is evidence to sustain the findings and whether the proceeding is free from a violation of law and any manifest abuse of discretion. *Landau Advertising Co., Inc. v. Zoning Board of Adjustment et al.,* 387 Pa. 552, 128 A. 2d 559.

The ordinance in the present case designates the uses permitted in a B Business District as: "Section 9 (a) . . . Business 'B' Districts are intended primarily as neighborhood shopping centers for retail trade and neighborhood services but the buildings, structures and uses permitted and prohibited therein *shall be the same as for Business 'A' Districts,* except that no process of manufacture, assembly or treatment not clearly incidental to a retail business conducted on the premises shall be permitted in these Districts." (Emphasis supplied). Since the use requested by the applicant is not specified in this section of the ordinance, it is necessary to examine the permissible uses listed in a Business A District, which uses are also expressly permitted in a Business B District. The section governing Business A Districts provides: "Section 8: Business 'A' Districts are primarily for the conduct of retail trade and general business. Buildings and uses

permitted therein are: all buildings and uses permitted in the Residence 'C' and 'D' Districts; stores, shops and business offices; restaurants, hotels and theaters; garages and gas filling stations, subject to the regulations of paragraph (e) Section 12, and as permitted by law in all other respects; and *all other buildings, structures and uses except the following which are specifically prohibited*: . . . (Emphasis supplied). 6. Commercial warehouses, lumber and coal yards and building material storage yards." Nowhere in the ordinance is the storage and parking of trucks mentioned, either as a permitted or a prohibited use. The ordinance does, however, expressly permit *"all other* buildings, structures and *uses"* in both a Business A and B District, except the certain enumerated exceptions which are specifically prohibited, and none of which is concerned with the parking and storage of trucks. Appellants argue that the intention of the framers of the ordinance was to limit the uses permitted in business districts to retail and neighborhood stores. However, appellants ignore not only the quoted provision of the ordinance in Section 8 permitting all uses not expressly prohibited, but also the provision of the same section stating that business districts are intended not only for retail businesses, but in addition "for the conduct of . . . general business."

Appellants contend that the storage of trucks is in the nature of a commercial warehouse, and as such should be excluded under that prohibition contained in the ordinance. However, we fail to see how the use of the land for the parking of trucks, whether or not the trucks are loaded, can be considered as a commercial warehouse. No buildings are to be constructed, no loading or unloading will take place on the tracts, nor will there be any storage of goods of any type in the quantity generally associated with the

use of a property for a warehouse. Although we believe that there is some merit in appellants' contention that business districts are in general limited to retail and related uses, we cannot overlook the express wording of the ordinance in question, and we therefore hold that the Board committed no error of law in issuing a permit for the requested use as to Tract I located in the B Business District.

The final question for our determination is whether or not the applicant met the burden of proving unnecessary hardship in order to support the issuance of the variance as to Tract II. Tract II is situated in a B Residential District. It is bounded on the west by Tract I, on the south, across Dent Street by a tract of land, leased and used by Modern for the same use as requested in this case, and a tool company, both located in the Business B District,[2] and both fronting on Hanover Avenue, a heavily travelled commercial thoroughfare, on the east, across Nelson Street by a vacant lot, and a scrap lumber yard, a non-conforming use in a B Residential District, and on the north, across Tilghman Street by a B Residential District. It is obvious that Tract II represents a peninsula, jutting down from the B Residential District north of Tilghman Street, entirely surrounded, except for the vacant lot on Nelson Street, by commercial districts or uses. The applicant introduced the testimony of a real estate broker who had been in business in the immediate neighborhood for approximately forty years, stating that in his opinion Tract II was unsuitable for residential uses and could not be developed for that purpose. This testimony was not contradicted by the appellant objectors. In view of the unique location of Tract II,

---

[2] 1301 to 1317 Hanover Avenue is occupied by Modern; 1319 to 1321 by the Carney Tool building.

surrounded on three sides by commercial uses or districts, that the requested use is a permissible use within a B Business District, and the uncontroverted testimony that the land is unsuitable for the use for which it was zoned, we believe that the applicant has met the burden of proving unnecessary hardship.

In addition, the Board has attached the following conditions to the grant of the variance: ". . . to pave the land, to erect a cyclone fence and plant shrubbery along the south side of East Tilghman St., to restrict the operation of its vehicles on East Tilghman St. north of the tracts, and to restrict them on Maxwell and Nelson Streets north of East Tilghman St., except in the case of an emergency when Hanover Ave. is impassable." It is apparent that the Board attempted to alleviate whatever objections appellants had to the proposed use and to create a natural buffer zone between the residential and business districts concomitant with the right of the applicant to use his land in a reasonable manner when otherwise it might remain vacant. We recognize that the legitimate complaints of the appellants as to noise and traffic were not completely dispelled by the attached conditions, but we also realize that the same complaints may be made whenever there is a merging of a commercial and a residential district as in the present case.

Appellants finally contend that the present case should be governed by *Michener Appeal*, 382 Pa. 401, 115 A. 2d 367. There we held that if the alleged hardship arose from an improper zoning of the area, or was brought about by a subsequent downgrading of uses within the district, and the impact of this hardship operated equally on all properties, the remedy was not through the variance procedure, but rather through an amendment to the ordinance by the appropriate legislative body. Appellants in effect argue

that even if it be assumed that Tract II is not properly zoned, this situation has arisen because of changed conditions in the neighborhood that call for a complete rezoning of the area rather than a so-called piece-meal process by the utilization of the variance procedure. We do not find that this situation exists, nor that the principles that we enunciated in *Michener Appeal* are applicable to the present case.

No argument can be made that the area north of Tilghman Street and northeast of Nelson Street was, or is not now suitably zoned B Residential, and, in fact, the Board specifically found that those areas were properly zoned. Appellants themselves introduced positive testimony that several new homes have been built in the area north of Tilghman Street. Obviously, the scrap lumber yard across Nelson Street to the east of Tract II, which is a non-conforming use, must have been used for that purpose at the time of the passage of the ordinance. Nor is any argument made that the Business B zone to the west and south of Tract II does not in general accurately reflect the use that is being made of the land. Although it is true that a variance was garnted in 1952 by a previous Board, without any reported decision or reason for so doing, for the property directly south of Tract II for the same use as is now requested, our present interpretation of the ordinance as permitting such a use within a B Business District negates the efficacy of any contention that such a variance represented a downgrading of uses within the district. Certainly, appellants cannot contend that the use that the applicant intends to make of Tract I can be considered as a changed condition. The fact that vacant property within a designated district is subsequently used for the purpose for which the area was initially properly zoned does not constitute the changed conditions that demand legisla-

tive rather than administrative action. The conclusion is unavoidable that due to its location, the impact of the hardship of this ordinance operates only on Tract II, and does not require a general rezoning of the area. We therefore find that the hardship urged by the applicant is peculiar only to Tract II, and for the reasons previously stated, hold that there was no such manifest abuse of discretion in granting the variance as to require a reversal by this Court.

OPINION PER CURIAM, April 21, 1958:

This opinion written by Mr. Justice CHIDSEY is adopted and filed as the opinion of the Court.

Order affirmed.

Mr. Justice BELL dissents.