## Bartolacci Appeal

*Michael V. Franciosa*, for appellants.

*William P. Hogan* and *Raymond J. DeRaymond*, for appellees.

BARTHOLD, P. J., March 3, 1964.—Raymond Bartolacci and Emily R. Bartolacci, his wife, in February and March 1963, purchased two parcels of unimproved land in Williams Township consisting of 12 acres, bounded on the north by Line Street, on the east by St. John Street, on the west by an unopened street designated Davis Street, and on the south by other unimproved land. At the time of the purchase the land was zoned "Residential Limited Family".

On May 23, 1963, the Bartolaccis filed an application with the zoning officer requesting a variance for the erection of a "Retail food and discount department store". On the same date the zoning board held a hearing on the application and "voted unanimously to grant the variance". Pursuant to the action of the board, the zoning officer issued to the Bartolaccis "Zoning Permit No. 286" for the construction of a "Super Market and Discount Department Store".

The Bartolaccis started to build the supermarket on or about September 15, 1963. On November 29, 1963, the zoning officer delivered a notice to Mr. Bartolacci stating, inter alia, that the building "is not being erected in accordance with the plan . . . submitted to the Zoning Board" in that "the westerly side of the building is less than 125 feet from the westerly side of Davis Street", and stating further that, "unless this building is located in accordance with the plan . . . submitted . . . within the next ten (10) days, the variance granted . . . may be revoked".

It should be noted here that the only plan submitted to the board was a rough sketch of the proposed layout. It was not drawn to scale and was in no sense a complete and definitive plan.

On December 10, 1963, the zoning officer served a "Stop Work Order" on the Bartolaccis, allegedly because the building was not located "at the place" where the Bartolaccis "advised the Board . . . it would be placed", and because they did not "apply for a further variance or modification. . . ."

As of the date of the issuance of the "Stop Work Order" the Bartolaccis had expended or incurred liabilities in construction costs to the amount of $300,000.

On December 20, 1963, the Bartolaccis filed an appeal with the board requesting the board to vacate the "Stop Work Order" on the ground that there had been no violation of the provisions of the zoning ordinance as modified by the variance theretofore granted.

On January 20, 1964, after a full hearing, the board sustained the action of the zoning officer and dismissed the appeal.

On January 23, 1964, the Bartolaccis (hereinafter designated "appellants") appealed the decision of the board to the court of common pleas. At the court hearing on February 17, 1964, the parties offered in evidence the proceedings before the board as well as additional testimony. Since additional testimony was offered, this court, in reviewing the decision of the board, has the authority to review the case de novo and determine the matter on the merits.

Where the court takes additional evidence, it may reverse or affirm in whole or in part and make such decision as to it may appear just and proper under the evidence and applicable principles of law.[1]

---

[1] Garbev Zoning Case, 385 Pa. 328, 334-35; Walker v. Zoning Board of Adjustment, 380 Pa. 228, 236.

No one has questioned the right of the board to grant the variance, nor has anyone questioned the right of the board to impose reasonable conditions, restrictions or safeguards as a prerequisite to the grant of the variance.[2] The sole issue is a factual one: Did the board impose any conditions or restrictions as a prerequisite to the granting of the variance?

Article 1307.2, subsection (2), of the Zoning Ordinance of the Township of Williams, provides:

"(2) In granting any variance the Board shall *prescribe* any conditions applying thereto that it may deem to be necessary or desirable . . ." (Italics supplied).

The minutes of the meeting of the board held on May 23, 1963, disclose that Mr. Bartolacci requested a "variance to build a supermarket and discount house" on property located in a district zoned as "Residential Limited Family" and that "the Board voted unanimously to grant the variance". There is nothing in the minutes to indicate that the board "*prescribed* any conditions" as required by article 1307.2 of the zoning ordinance, supra.

Pursuant to the action of the board, the zoning officer on May 23, 1963, issued a zoning permit, no. 286, to appellants authorizing them to construct a "Super Market and Discount Department Store". The permit is not conditioned upon compliance with any conditions or restrictions.

The minutes of the board meeting held on May 23, 1963, contain the following colloquy between Mr. Bartolacci and the members of the board:

"Bartolacci said he would like to get the building

---

[2] Van Sciver v. Zoning Board of Adjustment, 396 Pa. 646; Everson v. Zoning Board of Adjustment, 395 Pa. 168; Nicholson v. Zoning Board of Adjustment, 392 Pa. 278; Swade v. Springfield Township Zoning Board of Adjustment, 392 Pa. 269; Moyerman v. Glanzberg, 391 Pa. 387; Archbishop O'Hara's Appeal, 389 Pa. 35.

started as soon as possible. A sketch of the proposed building was examined by the board and I (Robert Fox, zoning officer and secretary of the board) pointed out that the distance from the building to the right of way on Davis Street did not conform. The distance on the sketch was 25 ft. and the minimum should be 35 ft. After some discussion Mr. Bartolacci changed the distance from 25 ft. to 125 ft." (Note: This change was pencilled on the plan.)

The board contends that the above recital of oral conversations, relative to the setback distance from Davis Street, raises the implication that the variance was granted on condition that appellants would locate their building 125 feet back from Davis Street, a proposed but unopened street.

The board offered no evidence to show that the minutes were incomplete, incorrect, or otherwise failed to show what actually occurred. Not a single member of the board appeared in court to testify that he cast his vote for the variance on condition that the building would be located 125 feet back from Davis Street. Apart from the presentation of such evidence, we cannot read into the minutes any implied imposition of conditions or restrictions.

"It is presumed that the minute record of corporate proceedings covers the entire action of the corporation, but parol evidence may be introduced to show what was in fact done, and if the minutes appear on their face or are shown to be incomplete or incorrect or otherwise fail to show what actually occurred, parol evidence is admissible to supply the omission and to aid, correct and supplement them, or to aid in ascertaining the true meaning of indefinite or ambiguous records": 8 P. L. Encyc., Corporations, §21, p. 515.

We deem it significant that the testimony of Robert Fox, secretary of the board, established affirmatively that the board did not insist that the building be lo-

cated 125 feet from Davis Street, but was interested only in making certain that appellants would comply with the setback requirement of 35 feet, as prescribed by the zoning ordinance.

Mr. Fox testified as follows:

Q. "Do you notice there is a cancellation on that plan . . . of the figure 25 feet?

A. "Yes.

Q. "Can you tell us what happened with that change in figures?

A. "Well, when we looked over this plan, Mr. Bartolacci was there and Mr. Franciosa, the supervisors and the zoning board, I noticed that it says 25 feet from the edge of the building up to the right of way of Davis Street, and I brought it to *their* attention that it should be at least 35 feet; that's what the zoning ordinance calls for. And there was quite some discussion there about power lines, water lines, cemetery fence, and trailer parking. And before it wound up, Mr. Bartolacci changed it from 25 feet at the right of way of Davis Street to 125 feet from the westerly boundary line at the cemetery to the edge of the building. . . .

Q. "Was there anything else said about the 125 feet?

A. "No. When he wrote that down there, that satisfied *us* on the zoning there. It would be more than 35 feet, so that satisfied *us*. It wasn't *our* idea of putting the 125 feet in there.

BY THE COURT:

Q. "As long as it was 35 feet or more, it was all right with you?

A. "That's right. . . .

BY THE COURT:

Q. "And you have a zoning ordinance that would require that building to be set back 35 feet . . . ?

A. "From the street.

Q. "From that proposed street?
A. "That's right.
Q. "Whenever it's opened?
A. "Yes, sir".

In this connection, it should be noted that the building, as presently located, sets back from Davis Street a distance of 70 feet at one end and 68 feet at the other. This is in full compliance with the 35-foot setback provision of the zoning ordinance.

Mr. Bartolacci testified that he originally intended that delivery trucks would be handled on the western side of the building, but later decided that the eastern and southern sides would be better suited for this purpose. He testified that when the foundations for the building were actually laid, he provided for the handling of trucks on the eastern and southern sides of the building, rather than on the western side of the building, and thereby obviated the need for 125 feet on the western side of the building for the handling of trucks. The building was then laid out in full compliance with normal zoning regulations. Mr. Bartolacci's testimony in this regard was uncontroverted.

All of the testimony, including that offered by the board, supports a finding that all of the parties understood the setback of 125 feet to be tentative and not an irrevocable condition.

That this was the understanding is further strengthened by the fact that the plan submitted by appellants to the board at the time they applied for a variance was not drawn to scale, and was incomplete in many respects. It lacked setback distances on the east and south boundaries. It indicated a setback distance of 200 feet from Line Street on the north, whereas the actual distance from the building as now erected is 400 feet. It indicated that the proposed building would contain 50,000 square feet, whereas the building as constructed contains approximately 25,000 square

feet. How then can the board successfully contend that one distance on the rough plan submitted became a condition when pencilled on the plan, but other distances did not? Manifestly, the board did not consider the exact location of the building important, provided that its location conformed to the setback provisions of the zoning ordinance.

We are firmly convinced that the resolution of the board granting the variance and the permit issued pursuant thereto do not *prescribe* any conditions as a prerequisite to the grant of the variance, although such prescription is required by article 1307.2(2) of the zoning ordinance.

We are also convinced that the record before us establishes that the zoning board never intended to impose a setback restriction of 125 feet on the western boundary of the subject property. Even if it is assumed that the board intended to impose such condition, the board failed to produce any testimony to prove special circumstances requiring a setback of more than 35 feet. In the absence of such proof, we must conclude that a setback requirement of 125 feet would bear no reasonable relation to the health, safety, morals and general welfare of the public. The board had the burden of showing some reasonable purpose for the imposition of conditions. It is clear, under well established legal principles, that a zoning board may impose conditions in granting variances, but it is equally clear that the conditions imposed must bear some reasonable relation to the purpose of the variance.[3]

Conclusive against the board's position is the fact that after the variance was granted, without prescrib-

---

[3] Fifty-Fourth Street Center, Inc. v. Zoning Board of Adjustment, 395 Pa. 338; Van Sciver v. Zoning Board of Adjustment, 396 Pa. 646.

ing any conditions, appellants expended or incurred liabilities of approximately $300,000 in the erection of a building. Such substantial expenditure or irrevocable commitment created a property right in appellants as to which they are entitled to protection. A right thus acquired cannot be abrogated by a subsequent attempt to revoke a permit.[4]

". . . subject to the right of appeal, a property interest arises in the landowner where, after a permit is granted, the landowner begins construction of a building and incurs liability for future work": 26 P. L. Encyc., Municipal Corporations, §454, p. 109.[5]

"A permit may be vacated or revoked in cases where the property owner has not yet in good faith incurred substantial obligations in reliance on the permit. However, the permit must be revoked for a proper reason, and not arbitrarily": 26 P. L. Encyc., Municipal Corporations, §454, pp. 110, 111.

For the reasons herein stated, it is our considered judgment that the "Stop Work Order" was issued arbitrarily and without proper reason, and, therefore, enter the following order:

### ORDER

And now, March 3, 1964, the appeal of Raymond A. Bartolacci and Emily R., his wife, from the order of the zoning board directing them to stop the construction of a supermarket and department store on their property in Williams Township is sustained and the order of the zoning board reversed. Appellants are permitted to complete construction of said supermarket and discount department store under permit no. 286.

---

[4] Herskovits v. Irwin, 299 Pa. 155.

[5] Silverco, Inc. v. Zoning Board of Adjustment, 379 Pa. 497; Shapiro v. Zoning Board of Adjustment, 377 Pa. 621; Dunlap Appeal, 370 Pa. 31.