# Yurgosky v. Zoning Board of Adjustment

*Robert H. Jordan,* for appellant.

*William G. Malkames,* for appellees.

SCHEIRER, J., May 1, 1968.—Before us is an appeal from the grant of a special exception by the Zoning Board of Adjustment of the Township of Salisbury. The original application was filed by the Benjamin Craig Corporation but Olde Woodmere Company is now the substituted applicant by virtue of having acquired title to the land. Following the appeal to this court, the zoning board conducted a public hearing for the purpose of establishing a record. The board then filed findings of fact and an order.

The application for a special exception was to erect 240 apartment units to be contained in 20 buildings containing 12 apartment units each on a tract containing 20.29627 acres of land and which adjoins the City of Allentown on the northwest. The tract is zoned R-1. This adjoining area of the city is composed of single homes. At the aforementioned hearing, over the objection of appellants, the application was amended by the addition of a tract of land on the southeast containing 9.10292 acres. The total acreage available for the project is 29.39919.

Appellants base their appeal on the alleged impropriety of amending the application, since the appeal was taken from an order involving the lesser acreage, on the alleged lack of conformity of the application to the requirements of the ordinance and, finally, on the alleged abuse of discretion by the board because there is only one thoroughfare affording ingress and egress to and from the tract which it is claimed will create a traffic problem, particularly on South Church Street, a city street which has a 30-foot cartway.

Counsel for the applicant challenges the right of appellants, owners of property in the city adjoining the tract in the area where entrance will be had to the tract on Greenwood Drive, to appeal from an order of the board in the neighboring municipality of Salisbury Township. Counsel argues "the administration and enforcement of such an ordinance (zoning) should be peculiarly within the province of the constituents of the municipality enacting and no others".

The ordinance provides: "Any person aggrieved by any decision of the board of adjustment, or any taxpayer, or any officer of the township may, . . . appeal to the court of common pleas . . ." The language follows exactly the provision in the enabling Act of Assembly. See Act of June 24, 1931, P. L. 1206, art. XXXI, sec. 3107, as amended, 53 PS §58107.

It can be seen that the right of appeal is not limited to a resident of Salisbury Township. The test is, is appellant aggrieved? Obviously, an owner of property in the City of Allentown located three miles from a tract in Salisbury Township would have considerable difficulty showing that he was "aggrieved" insofar as his property was concerned. If the rule were as suggested, a property owner on the opposite side of a boundary line could not appeal a decision of a zoning board in a neighboring municipality even though the order might permit an offensive use of property adversely affecting the property of appellant. It has been held that a tenant may be a person aggrieved and has a right of appeal. See Richman v. Zoning Board of Adjustment, 391 Pa. 254, 137 A. 2d 280; Nicholson v. Zoning Board of Adjustment, 392 Pa. 278, 140 A. 2d 604. It is clear that appellants did occupy a status which permitted them to appeal an adverse decision.

Counsel for appellants objects to the allowance of an amendment to the original application whereby additional acreage was made available to the project, principally, because section 902 of the ordinance provides that the application must be accompanied by a plan "showing the proposed building in its exact relation to all property lines and to street or road lines". Of course, the additional acreage was not shown on the plan initially filed. A small plan was attached to the board's order showing its location. There was testimony as well at the hearing describing its location. It is our opinion that appellants were not prejudiced by the failure to include the additional acreage on the initial plan. Had it been done, it would have revealed nothing as to street or road lines. It would obviously have shown a new property line. The tract is vacant, hilly and unimproved. We do not mean to encourage the allowance of amendments to applications following appeal, especially if such amendment

places appellants at a disadvantage. But here, the amendment was to correct a deficit of land area, a correction in the public interest. The ordinance is silent as to the right to amend but we think the test should be, does the allowance create legal prejudice? In the instant case, we think not. Were we to hold otherwise, the applicant would be compelled to reapply which would cause costly delay.

"An 'exception' in a zoning ordinance is one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist": Devereux Foundation Inc., Zoning Case, 351 Pa. 478, 483, 41 A. 2d 744, 746.

The burden of establishing that the use would not violate the health, safety and morals of the neighborhood is not on the landowner, but, rather, the burden of establishing such detriment is upon those who oppose the issuance of a special exception: Temple University v. Zoning Board of Adjustment, 414 Pa. 191, 199 A. 2d 415. The issue here is whether the board has committed a manifest abuse of discretion.

According to the ordinance, the board may authorize the issuance of a permit for a multi-family housing development conforming to the requirements of section 801 which we will quote. The special exception is subject to the following conditions:

"However, permits for such special exceptions shall be authorized by the Board of Adjustment only upon satisfaction in each instance of such conditions as to the general character, height and use of structure or structures; as to the provision of surrounding open space and treatment of the grounds; as to the general fitness of the structure or use to its proposed location; as to the provision of automobile parking or storage space; and as to street capacity and use as, in the opinion of the Board, may be necessary to safeguard public health, comfort and convenience, and as may

be required for preservation of the general character of the neighborhood in which such building is to be placed or such use is to be conducted.

"To assist the Board of Adjustment in its determination, an application for a permit under this Section shall be accompanied by plans and other descriptive matter sufficient to clearly portray the intentions of the applicant, and such plans and other descriptive matter shall become a part of the record".

Section 801, in part, provides:

"After reference to and approval thereof by the Township Planning Commission, and upon the conditions set forth under Section 800, the Board of Adjustment may authorize the issuance of a permit or permits for the construction of a group of multi-family dwellings in an R-1 or an R-2 Residence District, provided: a) the area for development is not less than 10 acres and, if contained in an existing or proposed land subdivision, it extends throughout the full block or blocks upon which it fronts; b) the height of buildings does not exceed 3 stories and 35 feet; c) if in an R-1 Residence District, the total coverage of the net land area (area exclusive of streets) by buildings does not exceed 12 per cent and the number of dwelling units per net acre does not exceed 12; . . . e) the sanitation facilities and water supply are approved by the State Board of Health or by other public authority having jurisdiction; f) the same front yards are provided as are required for other buildings in the same class of district and the same requirements as to the location of garages and other accessory buildings are observed; and g) garage or other automobile storage or parking space is provided on the premises, sufficient for 1½ cars for each dwelling unit contained in the development".

Appellants contend that since at the time of application the 20-acre tract devoted to the project was a

part of a 45-acre tract, a severance of the 20-acre tract created a subdivision and thus brings into play section 801(a) of the ordinance. There is grave doubt that a subdivision has been created. A reference to the definition of a subdivision in the Act of August 9, 1955, P. L. 323, sec. 2004(a), as amended, 16 PS §2004(a), makes this apparent.

"The County Planning Commission shall have jurisdiction and control of the subdivision of land located within the county limits. For the purpose of this section, a subdivision shall be construed to be: A division of any part, parcel or area of land by the owner or agent, either by lots or by metes and bounds, into lots or parcels, three or more in number, for the purpose of conveyance, transfer, improvement or sale, with appurtenant roads, streets, lanes, alleys and ways, dedicated or intended to be dedicated to public use, or the use of purchasers or owners of lots fronting thereon. All plans, plots, and replots of land laid out in building lots, and the streets, highways, alleys or other portions of the same intended to be dedicated to public use, or the use of purchasers or owners of lots fronting thereon or adjacent thereto, located within the county limits, except those located within a city or borough or within a township having adopted by resolution or ordinance land subdivision regulations, shall be submitted to the County Planning Commission, if one has been created, and approved by it before they shall be recorded".

Certainly here, there are not three lots or parcels as required, nor is there an intention to subdivide into lots for sale within the usual meaning of a subdivision.

One of the provisos for the issuance of a permit for the construction of a group of multi-family dwellings, section 801c, is "if in an R-1 Residence District, the total coverage of the net land area (area exclusive of streets) by buildings does not exceed 12 percent and

the number of dwelling units per net acre does not exceed 12"; The board after accepting a total area of 29.39919 acres devoted to the project (including the 9.10292 acreage added by amendment of the application) has made a finding of fact, no. 43, that the total coverage of the net land area by buildings is 12 percent. This calculation was based on 30-feet wide streets with a right-of-way of 50 feet. The plan proposes and the board approves that at certain places perpendicular parking shall be permitted partially within the right-of-way. Eighteen feet on either side of the 30-foot cartway is to be utilized for parking. Appellants renew their objection that the amendment should not be permitted because if only 20 acres were considered the percentage of coverage of the net land area by buildings would be higher than the allowable 12 percent. We have already indicated that the additional acreage should be deemed available to the project.

Also appellants, at the hearing and in argument, make much of an alleged discrepancy caused by the filing of two plans with the board. One, a detailed site plan (applicant's Exhibit No. 1) shows the location of the proposed units and the parking spaces along the streets. A 30-foot cartway is shown as well as 18 feet on each side for parking. The other plan labeled "Street Dedication Plan," appellants' Exhibit No. 1, also shows a 30-foot cartway and a 50-foot right-of-way but does not reflect the change made to accommodate parking. Appellants would appear to argue that a 50-foot street should be utilized for calculation purposes because then the net land area covered by buildings would be in excess of 12 percent. "Street" is defined in the ordinance as follows: "A thoroughfare publicly or privately owned, open to general public use and having a right-of-way width greater than 20 feet". It is apparent that the board relied on the site

plan and approved a 30-foot cartway though a 50-foot right-of-way was adhered to. The extra footage beyond the right-of-way for parking purposes was added by the applicant and, in areas other than where parking is planned, the line on either side of the 66-foot area (30 feet added to 36 feet for parking) is retained. In both the order appealed from and in the order filed after hearing, there is a provision that "any and all construction . . . shall be in accordance with a certain site plan . . . and (a) street dedication plan". Thus both plans may be considered but it is obvious that the calculation was based on a 30-foot cartway rather than a 50-foot right-of-way. There is no prohibition in the ordinance against a 30-foot cartway. Apparently a street is a "thoroughfare" having a right-of-way width greater than 20 feet. We accordingly are of the opinion that there is no compulsion to utilize the 50-foot right-of-way to determine the net land area covered by buildings. Section 801(c) merely provides that net land area is the area "exclusive of streets". The position of appellants is more technical than real.

The same approach is taken to attack the board's conclusion that the number of dwelling units per acre does not exceed 10. (The ordinance prohibits more than 12.) It is contended that the area reserved for parking is "public open space" and should also be deducted from the gross area in determining the net land area. The ordinance contains this definition: "The term 'land area', when referring to the required area per dwelling unit, means 'net land area', the area exclusive of street and other public open space". Since we are of the opinion that the total acreage to be considered is 29.39919, the argument loses its potency. We frankly have some difficulty in determining if the parking spaces along the streets should be considered "public open space". We are without guidance as to

what this term implies. The total tract including the streets at this time is privately owned. The developer has dedicated the streets but the township has not accepted them. The parking area obviously is for the benefit of the tenants and their guests. The board's finding of fact no. 41 is: "All of the land in the proposed tract, with the possible exception of the proposed streets, if the same are accepted by the Township of Salisbury, will remain private property and there is, therefore, no 'public' open space within the proposed apartment project site". Under all of the circumstances, we shall accept this finding and not include the parking area as "public open space" in the calculation.

It is appellants' contention that the order is vulnerable because the individual parking spaces are less in square footage than the required 240 square feet. 410 parking spaces have been allotted, more than the 360 required under the ordinance. The board has approved the 410 spaces since the total area devoted to parking is in excess of the total area required. We shall not disturb this finding but observe it would be simple for the applicant to make the appropriate adjustment. We find that the parking arrangement is in substantial conformity with the ordinance.

Section 801 requires that the same front yards are provided as are required for other buildings in the same class of district. Section 401 provides that the setback at the front shall be 30 feet from the front property line or 55 feet from the center line of the street whichever distance may be greater. The board in its finding no. 52 has concluded that "All buildings are set back at least 40 feet from the front property line and at least 55 feet from the center of the street on which the buildings front". The finding is grounded on the fact that 40 feet is the distance between the outer lines of a 50-foot right-of-way and the front of

the building. This is the total of the 18 feet devoted to parking and 22 feet to the property line. Appellants have accepted the 22-foot figure because it is indicated on the plan that that is the distance from the house side of the parking area to the building. As has been pointed out, 16 feet has been added to the 50-foot right-of-way to provide for a 30-foot cartway and 2 parking spaces of 18 feet each. We accept the board's approach to its conclusion that a 40-foot setback exists especially since section 802.1 grants the right in large scale developments to waive the front yard requirements.

One of the more troublesome problems in this proceeding has been created by the availability of only one street for ingress and egress. This would be on Greenwood Drive coming off South Church Street and Greenwood Street both in the City of Allentown. The board in its order has recognized the problem by limiting present construction to 9 buildings and 108 units. The authority to construct 20 buildings with 240 units is conditioned upon the availability of a second access road from a public street either at the northwest or southwest end of the tract. The plan contemplates an oval street arrangement with buildings on the "island" and along the opposite side of the streets. Thus one would circle the island to return to the city streets. Fear was expressed that South Church Street would be inadequate to carry the additional traffic from the area of the proposed development. The effect of this position was weakened by the authorization to construct less units than originally proposed. In re O'Hara's Appeal, 389 Pa. 35, 131, A. 2d 587, the matter of traffic was discussed.

"Any traffic increase with its attendant noise, dirt, danger and hazards is unpleasant, yet, such increase is one of the 'inevitable accompaniments of suburban progress and of our constantly expanding population' which, standing alone, does not constitute a sufficient

reason to refuse a property owner the legitimate use of his land: Rolling Green Golf Club Case, supra, 374 Pa. at page 457, 97 A. 2d at page 526. It is not any anticipated increase in traffic which will justify the refusal of a 'special exception' in a zoning case. The anticipated increase in traffic must be of such character that it bears a substantial relation to the health and safety of the community. A prevision of the effect of such an increase in traffic must indicate that not only is there a likelihood but a high degree of probability that it will affect the safety and health of the community, and such prevision must be based on evidence sufficient for the purpose. Until such strong degree of probability is evidenced by legally sufficient testimony no court should act in such a way as to deprive a landowner of the otherwise legitimate use of his land".

The evidence adduced does not show that the increased traffic will bear such a substantial relation to the health and safety of the community as to deprive the applicant of the otherwise legitimate use of his land.

One of the objectors is concerned with a possible loss of privacy and especially because his property will be bordered by three streets. The right of privacy is not absolute and though desirable and pleasant cannot prevent a building operation on adjoining land. There was no vested right in his view of unimproved and possibly scenic land adjoining his property.

The case can be better understood if the location of the tract is described. The tract is vacant, woodland and on the side of a mountain. It is bounded on one side by heavily wooded forest land, on another by property of the City of Allentown containing a reservoir and park land and on another side by land of Waldheim Park Association upon which are constructed frame cottages occupied during the summer

286

months. On the remaining side are the properties of the appellants and beyond them a residential area. Appellants will be closest to the development and, hopefully, the applicant will, as he indicated, permit present trees to remain or if this is not possible, plant other appropriate trees or shrubbery to shield their view.

Some other claims of appellants are mere expressions of concern most of which are provided for in the order and others would be in the eventual domain of municipalities. Appellants and their counsel have been painstaking in their examination of the proceedings, but we conclude that the board has not abused its discretion and that the exception granted has been in substantial conformity with the ordinance.

The proposed use of the applicant's land will not, in our judgment, either change the character of the neighborhood or be detrimental to it. Admittedly several interesting questions have been raised; some of them are the result of the present trend of developers to attempt the use of their land to the fullest since the number of tracts available to them is shrinking and their cost high.

ORDER

And now, May 1, 1968, it is ordered that the above captioned appeal be and it is hereby dismissed and the order of the Zoning Board of Adjustment of the Township of Salisbury is affirmed.