## Beaver County v. Beaver Board of Zoning Adjustment

*Robert J. Masters,* for plaintiff.
*Clyde Holt, Jr.,* for defendant.

ROWLEY, J., July 21, 1970.—This is an appeal by the County of Beaver (county) under the provisions of article 10 of the Pennsylvania Municipalities Planning Code of July 31, 1968, (Act no. 247) 53 PS §§10101, et seq., from a decision of the Beaver Borough Board of Zoning Adjustment (board) which imposed certain conditions on the issuance of a zoning permit to the county. The Borough of Beaver (borough) did not intervene in the appeal, as it had a right to do under section 1006 of the code, 53 PS §11006. A hearing was held before the court, at which time additional testimony was presented by the county. Counsel for the board attended the hearing and was permitted to crossexamine the county's witnesses. The county solicitor has submitted a written brief and a brief was filed by the board's solicitor on its behalf. Having taken

additional testimony, it is our duty to hear the case de novo and determine the case on its merits: Cooper v. Board of Adjustment, 412 Pa. 429 (1963). This is so, regardless of the substance or significance of the evidence received at the hearing before us: Rogalski v. Upper Chichester Township, 406 Pa. 550 (1962). We do not believe that this function has been changed by the enactment of the new Pennsylvania Municipalities Planning Code, supra. Under section 1009 of the code, the reviewing court is still authorized to reverse, affirm or modify the board's decision: Pennsylvania Municipalities Planning Code, sec. 1009, 53 PS §11009.

On January 14, 1969, the Town Council of the Borough of Beaver enacted a new zoning ordinance in accordance with a comprehensive plan for the borough. In article 2 of the ordinance, the council established five separate and distinct zoning districts within the borough. These were identified as R-1, R-2, C-1, C-2 and C-3. The council enumerated certain "permitted uses" in each one of the five districts. "Governmental Services" is one of the permitted uses in each one of the districts with the exception of district R-1, which is limited to single-family dwellings, parks and playgrounds. The Borough of Beaver is the county seat of Beaver County and the courthouse is located in district C-3. Immediately to the north of the block on which the courthouse is erected the property is zoned C-2 and C-3. As indicated earlier, "Governmental Services" is a "permitted use" in both C-2 and C-3 districts. On April 21, 1970, the county filed an application, with the borough's zoning officer, for a "zoning permit" for the erection of a three-story annex to the courthouse to be used for county offices and court-related functions. The annex is planned to extend northwardly from the present building and be

erected within the C-2 and C-3 districts to the north of the present courthouse property. The permit was refused and an appeal was taken by the county to the board. The board held a hearing and decided that the county had complied in all respects with the zoning ordinance with the exception of provisions for adequate off-street parking. The county's application and plans provided for a total of 85 existing and new off-street parking spaces. The board concluded that under section 302.1(9) of this ordinance, 171 new spaces should be provided in addition to existing spaces. The board then directed that the zoning officer should issue a zoning permit for the proposed annex upon a showing by the county that 171 *new* parking spaces would be provided. It is from this decision that the county appealed to this court.

In considering the ordinance, it is well to bear in mind that zoning regulations restrict the free use of property by the property owner and are, therefore, in derogation of the common law. As such, they must be construed strictly and the property owner given the benefit of every doubt: Peterson v. Zoning Board of Adjustment, 412 Pa. 582 (1963). The free use of land by a property owner should not be fettered or restricted by implication. The widest permissive use of the land is the rule and not the exception: Fidler v. Zoning Board of Adjustment, 408 Pa. 260 (1962).

Section 302 of the ordinance provides that off-street parking spaces shall be provided for 13 types of property uses throughout the borough with the exception of district C-1. There are *no* off-street parking requirements in the C-1 district. The 13 uses are designated in numbered subparagraphs as follows:

"(1) Residential dwellings.

"(2) Physicians offices and medical buildings.

"(3) Hotels and motels.

"(4) Restaurants.

"(5) Churches, auditoriums, theaters, stadiums or other places of public assembly.

"(6) Integrated neighborhood shopping plaza.

"(7) Furniture and appliance stores, motor vehicle sales, personal service shops, clothing stores, hardware stores.

"(8) Other retail stores, including food and confectionery, drugs, variety, news stands and novelty shops.

"(9) Financial institutions and business offices and professional services.

"(10) Funeral Homes.

"(11) Beauty and Barber Shops.

"(12) Bowling Alleys.

"(13) Drive-In Restaurants, refreshment stands and similar uses, private clubs and commercial recreation uses."

Owners of each of the 13 uses are required to provide a certain number of spaces determined by specified formulas. It is to be noted that nowhere did the borough include any requirement that parking spaces be provided for "Governmental Services." In fact, the board in its decision conceded as much, for it said:

"Section 302.1 defines the minimum number of parking spaces that shall be provided for thirteen (13) kinds of establishments. *None of the thirteen (13) uses specifically covers governmental services.*" (Italics supplied.)

The board "reluctantly concluded," however, that it was bound to require that the county provide off-street parking. It concluded that the "closest approach" was subsection (9) which requires that financial institutions, business offices and professional services provide one off-street parking space per office unit, plus one off-street parking space for every 400 square feet of

gross floor area. Using these figures as its criterion, the board then computed what it determined the office units and gross floor area to be and arrived at the figure of 171 new parking spaces for the annex. Certainly, the requirements contained in subsection (9) do not specifically include "governmental services" which is the "permitted use" being made of the property by the county, nor does it do so by implication. The ordinance does not define the term "governmental services" or "financial institutions." It does define "business office" as a room or series of rooms normally used in the operation of a business or profession. "Professional services" are defined as including auditing and accounting services, educational and scientific research services, engineering, architectural and planning services, legal services and medical and other health services. We do not believe that the town council in enacting the ordinance and in authorizing the use of land for "governmental services" included it within the definition of business office or professional services as written. In addition, professional services and business offices are each "permitted uses" in districts C-1, C-2 and C-3, as are governmental services. In district R-2, however, "governmental services" is a "permitted use." However, professional services and business offices are authorized in district R-2 only as a special exception. Thus, it appears clear that the council members, in adopting the ordinance, recognized a distinct difference between "governmental services" on the one hand and "professional services and business offices" on the other. The same is true of financial institutions, since financial institutions are not a permitted use in an R-2 district either by way of special exception or as a matter of right. Thus, the borough did distinguish between the various types of uses, and it cannot be concluded that in using the

terms "professional services, business offices or financial institutions" in subsection (9) of section 302 the council ever intended to include "governmental services." Moreover, it cannot be contended that the borough intended, in its adoption of the parking requirements in section 302.1, to require off-street parking provisions for *all* property uses in the borough. For example, lodges and noncommercial recreation buildings are "permitted uses" in districts R-2, C-1, C-2 and C-3. However, there are no parking restrictions found in section 302 for any of those uses. Likewise, commercial printing and publishing services are "permitted uses" in districts C-1 and C-2; auto repair garages and service stations are "permitted uses" in district C-2; photographer services are "permitted uses" in district C-3; however, in none of these situations is there to be found any parking requirement in section 302.1. We cannot assume that the borough, when it considered article 2 and the various types of uses to which land may be put to use within the borough, in turning to article 3 completely ignored or forgot some of those uses in adopting parking regulations. We conclude, rather, that council, when it enacted the ordinance, provided parking regulations for certain uses which it deemed necessary and omitted regulations for other permitted uses of property in the borough.

In spite of the lack of any authority contained in the ordinance to do so, however, the board stated that it felt compelled to impose parking restrictions on the county, before issuing a permit. Although the purpose may be laudable, we have concluded that the board exceeded the powers vested in it by either the ordinance itself or the statutory delegation of zoning powers to the various municipalities in the Commonwealth. It must be remembered that it is the function of the board to (1) hear appeals from actions of the

zoning officer; (2) to hear and decide requests for variances in cases of unnecessary hardship and finally; (3) when authorized by the ordinance, to grant special exceptions. Their function is very clearly an administrative one. The legislative function in the zoning process has been vested by the legislature in the town council. That power to legislate could not be delegated by the town council, even if it desired to do so, to the board of adjustment. The board is not a legislative body and its function is to administer the zoning ordinance *as adopted and enacted by the borough council,* the duly elected representatives of the citizens of the community. The board has only that power which is conferred upon it by the zoning ordinance and it must act within the limits of the power so conferred: Schaub Appeal, 180 Pa. Superior Ct. 105 (1955); Evitts v. Board of Adjustment, 42 Del. Co. 275 (1956). It is true that a board of adjustment has the power, under proper circumstances, to impose restrictions or limitations on the issuance of a variance or special exception, when the same is authorized under the ordinance. However, they have no power to rewrite the zoning ordinance. They have no power to amend the ordinance by adding to or subtracting from it. Rather, they are confined to the administration of the ordinance as it was written and enacted by the legislative body of the borough, that is, the town council. The imposition, by the board, of regulations or restrictions, where none exist, on the lawful and permitted use of one's land is legislation. Since the board has no legislative power, its attempt to impose such regulations is void. Mr. Justice Cohen, of the Pennsylvania Supreme Court, in English v. Zoning Board of Adjustment, 395 Pa. 118 (1959), said, at pages 121 and 122:

"The obligation of the members of Norristown Board of Adjustment was not to be statesmen; their obligation was to enforce the zoning ordinance in accordance

with the applicable law. Their action demonstrates that where the legislative bodies have failed to revise existing zoning legislation they hold out to the board the temptation to act as statesmen rather than instrumentalities through which the zoning law is applied.

"A zoning ordinance is never finally concluded. It is a type of legislation which the appropriate legislative bodies must continuously modify and amend. The legislative bodies must be alert to the developments which are constantly occurring in their communities which increase or decrease the commercial, residential or industrial desirability of particular areas. It is the responsibility of the proper legislative authorities to keep abreast of the changes so that zoning ordinances do not become obsolete but realistically reflect the changes which occur in the community. Even though the temptation be great if the legislative body fails to act, still the legislative function does not pass to the zoning board of adjustment."

In other words, it is for the town council to determine, under the proper exercise of its legislative powers, what parking regulations shall be imposed and on whom they shall be imposed. This is not the function or the right of the board of adjustment. But the borough, in this case, imposed no off-street parking requirements on the county. Nor did it authorize the board to impose such restrictions. In attempting to impose such restrictions, where none existed in this case, the board exceeded its power. Thus, we conclude that the condition attached by the board to the issuance of a "zoning permit" was invalid and unenforceable.

In this connection, it is well to point out that the borough itself did not see fit to intervene in these proceedings. It did not participate in or take part in the hearing before this court. While it is true that the

solicitor for the board is also the borough solicitor, the brief filed by him in this case was submitted on behalf of the board of adjustment. We deem the fact that the borough did not see fit to intervene to be significant. Also it would appear from the record before us that the dire consequences, predicted by counsel for the board in his written "brief," are not as serious as he would have us believe. The record and the testimony in this case clearly show that the new proposed annex will house only governmental offices and functions of the county government, such as new facilities for the commissioners, the controller, the sheriff, the courts and other government related offices. It is also clear that there is no intended or anticipated increase in staff or personnel to operate the offices. What will take place is merely a transfer of some existing facilities and personnel in the present courthouse to the new annex and an enlargement of space in the existing courthouse for those facilities already here which are not transferred. What is involved is merely the expansion of space in which the present activities of the county government and the courts will be conducted. There will be no new functions, no new agencies and no new or added personnel. It seems unlikely, therefore, that the existing parking situation will be substantially, if at all, altered by the construction of the new annex.

Finally, we would point out that it would appear that even if the board had the power or right to impose such restrictions by analogy to subsection (9) of section 302.1, it erred in its computation. The board determined that 64 offices existed in the proposed annex. However, at the hearing before us, the architect testified that only 30 offices would exist in the new annex. Thus, it appears that the board's figure of 171 is excessive even under its own approach to the problem. The fact that its requirement is excessive is recognized

by the board itself. After making its decision, the board stated, in an addendum, that it had reluctantly reached the conclusion it did on the basis that it was the only one possible. Apart from that, however, the board stated that its "members feel that the mandated parking requirements are unrealistically high for the courthouse." In this connection it was pointed out that to provide 171 *new* parking spaces would require 1-3/4 acres of land. This is more land than the county now has available for the entire project. In other words, the county could not provide 171 parking spaces on the land available, let alone erect the annex. The board, in its decision, suggested two remedies to the county. One was an appeal to the court, which was done. The other was to amend the ordinance. As indicated, however, we have determined that no amendment is necessary and that *the county is entitled to a permit under the ordinance as it is presently written.*

Counsel for the county urges that under no circumstance does the borough have the right to impose any regulation on the governmental functions and operations of the county. He argues that the county is not subject to the conditions and provisions of the zoning ordinance insofar as its governmental facilities and functions are concerned. It is uncontradicted in this case that the new annex will be a governmental function and operation. There will be no proprietary activities or functions carried on in the annex or in the existing building. The county solicitor cites a number of authorities in support of his proposition and it does appear that in a number of States that is clearly the law: 2 Metzenbaum, "Law of Zoning" (2d Ed.) p. 1280; 8 McQuillin, Municipal Corporations (3rd Ed., Revised) p. 45, §25.15; 2 Anderson, American Law of Zoning, §9.03, p. 106. Also see Green County v. City of Monroe, 3 Wis. 2d 196, 87

N. W. 2d 827 (1958); State v. Board of County Commissioners, 79 N.E.2d 698, aff'd. 78 N.E.2d 694; (Ohio App.) Lauderdale County Board of Education v. Alexander, 269 Ala. 79, 110 So. 2d 911 (1959); County of Los Angeles v. Los Angeles (Cal. App.), 28 Cal. Rep. 32 (1963); and County of West Chester v. Village of Mamaroneck, 246 N. Y. S. 2d 770 (1964). In Lees v. Sampson Land Company, 372 Pa. 126 (1952), the court stated that a municipality could, under proper circumstances, abrogate its own zoning ordinance insofar as its own governmental functions are concerned. However, we are also aware of the decision of the Supreme Court in School District of Philadelphia v. Zoning Board of Adjustment, 417 Pa. 277 (1965), in which the court held that Philadelphia, under its home rule charter, had the power to regulate, by zoning ordinance, the construction of a public school building which was within the city. While that decision may be distinguished from the facts in the present case, it is not necessary for us to do so in view of our decision that the zoning ordinance does not contain any regulations or restrictions concerning the number of parking spaces to be provided by the county. That issue, therefore, is not properly before us at this time.

Therefore, it appearing that the borough has imposed no parking requirement on the county, that the board has no power to do so in the absence of authorization from the borough, and the county having complied, whether required to do so or not, with all provisions of the zoning ordinance, we make the following

## ORDER

Now, July 21, 1970, after hearing, the appeal of the county of Beaver is sustained. The decision of the Beaver Borough Board of Zoning Adjustment is reversed. It is ordered and directed that a zoning permit be issued to the County of Beaver.