Eugene E. Lay, Appellant *v.* Zoning Hearing Board of the Municipality of Bethel Park and Municipality of Bethel Park, Appellees.

Argued May 7, 1981, before President Judge CRUMLISH and Judges ROGERS and BLATT, sitting as a panel of three.

*John M. Means, Markel, Schafer & Means, P.A.,* for appellant.

*Victor R. Delle Donne,* with him *Clifford B. Levine* and *Emilio P. Fastuca, Baskin and Sears,* for appellees.

OPINION BY JUDGE BLATT, July 29, 1981:

The appellant, Eugene E. Lay, seeks review of a decision of the Court of Common Pleas of Allegheny County which affirmed an order of the appellee, the Zoning Hearing Board (Board) of the Municipality of Bethel Park (Bethel Park).

The appellant owns a half-interest in a restaurant and bar in Bethel Park where the property in question constitutes a nonconforming use. He constructed an outdoor deck at the rear of the restaurant and then sought a site plan approval from the Bethel Park Planning Commission. In April of 1979, such approval was obtained, but four conditions were imposed requiring the appellant, before he could use the deck, 1) to widen the entrance to the parking lot on the premises, 2) to pave the parking lot, 3) to design the parking lot to provide for sheet drainage in all directions and 4) to agree to hold Bethel Park harmless in any dispute arising from drainage damage to adjoining properties. No appeal was taken from the imposition of these conditions. In August of 1979, the appellant applied for an occupancy permit for the deck which was denied by the Bethel Park building inspector because he had failed to fulfill the conditions appended to the site plan approval. He appealed to the Board and then to the court of common pleas, both of which affirmed the denial of the permit by the building inspector and this appeal followed.

The appellant first contends that the slag and "red dog"[1] material which presently covers the parking lot is sufficient to comply with Section 61-34H of the Bethel Park Zoning Ordinance which requires that all off-street parking areas "be paved with asphalt, concrete or similar material of adequate thickness to support the weight of fully loaded vehicles which customarily park on it." He maintains that the existing surface on the parking lot is adequate to support the weight of vehicles which normally use it and that the Board erred when it found that slag and red

[1] The term "red dog" was defined at oral argument as a porous surfacing material consisting of crushed slag.

dog materials are not "similar" to asphalt and concrete.

It is true that the Bethel Park Zoning Ordinance did not define the terms "asphalt", "concrete" or "paved". In making its determination, however, the Board examined the common definitions of those words[2] and concluded that the intent of Section 61-34H of the Zoning Ordinance was "that parking lots be constructed of composition materials that can be combined or mixed into a uniform mass which can be poured or layed [sic] like asphalt or concrete to form a uniform, solid surface." Based on the record before us, therefore, we cannot say that the Board abused its discretion or committed an error of law when it found that slag and red dog materials did not meet the requirements of that section.[3]

It is next argued that the requirement that the appellant pave his lot is invalid because such a con-

---

[2] Asphalt—"a composition of ground asphalt rock and bitumen, of bitumen, lime, and gravel, or even of coal tar, lime, and sand used for forming pavements and as a waterproof cement . . ."

Concrete—"a compound or mass formed by concretion, spontaneous union, or coalescence of separate particles of matter in one body . . . [;] a hard strong building material made by mixing a cementing material . . . and a mineral aggregate . . . with sufficient water to cause the cement to set and bind used in the construction of bridges, buildings, dams, pavements, tunnels and smaller products . . . [;] to form a solid mass . . ."

Pave—"to lay or cover with stone, brick, asphalt, concrete, or other material making a firm, level, or convenient surface for travel . . . [;] to cover firmly and solidly, . . ." Webster's Third New International Dictionary (1966).

[3] Where, as here, the court below has taken no additional evidence, our scope of review is limited to determining whether or not the zoning hearing board abused its discretion or committed an error of law in making its decision. *Manilla v. Zoning Hearing Board of Worchester Township*, 55 Pa. Commonwealth Ct. 114, 422 A.2d 1216 (1980).

dition forces him to engage in tortious conduct against his neighbors by causing water damage to their adjoining properties. This novel argument, however, is not supported by the facts. The record reveals that numerous means are available to control the increased drainage of water which would result from paving the lot and the appellant presented no evidence to show that those alternatives were physically or economically impossible. It is apparent, therefore, that the paving of this parking lot would not necessarily require the appellant to engage in tortious conduct against his neighbors.

Finally, the appellant asserts that he is entitled to a variance because the zoning ordinance imposes an undue hardship on him (1) in that his neighbors would suffer water damage as a result of the unique physical conditions of his premises caused by the slope of his land and the lack of storm sewers in the area and (2) that due to such physical circumstances the property cannot be developed[4] in conformity with the zoning ordinance and without liability for injury to other properties except at a prohibitive expense.[5] It was his burden, however, to establish his entitlement to a variance, *Avanzato Appeal, supra,* n. 5, and our review of the record reveals that he presented no evidence as to the cost of relieving the anticipated drainage problem or as to how much expense would be actually "prohibitive".

---

[4] The appellant also asserts that his situation fulfills the other requirements for a variance, *i.e.*, that the unnecessary hardship was not self-inflicted, that the variance will not alter the character of the neighborhood or be detrimental to the public welfare, and that the variance is the minimum required to afford relief. Section 912 of The Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10912.

[5] *See Avanzato Appeal*, 44 Pa. Commonwealth Ct. 77, 403 A.2d 198 (1979).

We will, therefore, affirm the order of the court below.[6]

ORDER

AND Now, this 29th day of July, 1981, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

---

[6] The lower court held that Bethel Park had no authority to require that the appellant agree to hold the municipality harmless from any disputes arising relative to the anticipated drainage problem and Bethel Park has filed no cross-appeal as to that portion of the decision below.