## Michener Appeal.

Argued April 22, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Edward H. Bryant, Jr.,* with him *Howard M. Lutz, Joseph T. Labrum, Jr.* and *Lutz, Fronefield, Warner & Bryant,* for appellant, Intervenor.

*Raymond E. Larson,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, June 27, 1955:

The decision of the court below was correct in holding that the plaintiff is not entitled to a variance, but for a reason other than that on which the decision was predicated.

Charles W. Michener, prior to his recent death, was the owner of four lots of land having a combined frontage of 215 feet on the north side of Township Line Road and a depth of 169 feet on the east side of Bewley Road, in Haverford Township, Delaware County. A dwelling house on the property was occupied by Michener and his family for more than 30 years, but he moved away in 1952, having entered into an agreement to sell the property to E. C. Bierkamp. The agreement was conditioned on the purchaser being able to obtain the right under the zoning law to build a store on one of the lots.

The premises are in a district classified as "C" Residential under the Haverford Township Zoning Ordi-

nance of July 29, 1925, as amended, which does not permit any business use of property in such a district. Michener, as owner, and Bierkamp, as equitable owner, applied to the Township Building Inspector for a permit to erect a one-story brick store building, 30 feet by 60 feet, on one of the lots, for the purpose of conducting therein a retail establishment for the sale of linoleum, tile, and other flooring. The Building Inspector refused the permit. The Township Board of Adjustment, on appeal, refused a variance on the ground that the applicants had not shown the existence of any hardship by reason of the zoning regulations that was different from that of the other property owners in the district.

Michener and Bierkamp appealed from the order of the Board to the Court of Common Pleas. While the proceedings were there pending Michener died and his widow, Hazel S. Michener, who succeeded to the ownership of the property as surviving tenant by the entireties, was allowed to intervene. The court at first decided that the Board should have granted a variance but subsequently, in its final decree, affirmed the Board's order and dismissed the appeal. This was because its attention had been called to the fact that each of the three deeds by which Michener acquired title to the lots contained a covenant whereby he agreed for himself, his heirs, executors, administrators and assigns, with the grantor, his heirs and assigns, never to erect upon any part of the ground certain enumerated kinds of buildings, among them a store, and not to convert any building thereon into a store. The court held that therefore the hardship complained of by the applicants did not grow out of the zoning ordinance but out of these restrictions in the deeds of title, and since the court could not remove the restrictions,

a variance permitting the erection of a store should not be granted.

The reason thus assigned for the court's decision was not a valid one. Zoning laws are enacted under the police power in the interest of public health, safety and welfare; they have no concern whatever with building or use restrictions contained in instruments of title and which are created merely by private contracts. If these applicants were to succeed in obtaining a variance relieving them from the restrictions of the zoning ordinance they would still be subject to the restrictions contained in their deeds, but the enforcement of those restrictions could be sought only in proceedings in equity in which the grantors, their representatives, heirs and assigns, would be the moving parties. As is well said in Bassett on "Zoning," (ch. 9, pp. 184-187): "Contracts have no place in a zoning plan. Zoning, if accomplished at all, must be accomplished under the police power. It is a form of regulation for community welfare. Contracts between property owners or between a municipality and a property owner should not enter into the enforcement of zoning regulations. . . . The municipal authorities enforcing the zoning regulations have nothing whatever to do with private restrictions. Zoning regulations and private restrictions do not affect each other. . . . It is obvious that the zoning and the private restrictions are unrelated. One is based on the police power, the other on a contract. The municipality enforces the former by refusing a building permit or ousting a nonconforming use. A neighbor having privity of title enforces the latter by injunction or an action for damages. . . . Courts in trying a zoning case will ordinarily exclude evidence of private restrictions, and in trying a private restriction case will exclude evidence of the zoning. This is done on the grounds of immateriality."

The fact that there were building restrictions in the deeds was wholly irrelevant in the appeal before the court on the question whether a variance should have been granted by the Board under the zoning ordinance. The private parties who alone possessed the right to enforce those restrictions were not before the court. It might be that they would never seek such enforcement, or that for some reason they had waived or lost their right so to do, or that, because of neighborhood changes or because the restriction had ceased to be of advantage to the covenantees,* the restriction would no longer have been enforceable. Accordingly it has been uniformly held that any consideration of building restrictions placed upon the property by private contract has no place in proceedings under the zoning laws for a building permit or a variance: *Pumo v. Mayor and Council of Fort Lee*, 4 N.J. Misc. R. 663, 134 A. 122; *Green v. Jones*, 5 N.J. Misc. R. 188, 135 A. 802; *Maplewood Township v. Margolis*, 102 N.J. Eq. 467, 141 A. 564; 104 N.J. Eq. 207, 144 A. 715; *Gulf Refining Co. v. City of Dallas*, 10 S.W. 2d 151 (Tex. Civ. App.); *Oklahoma City v. Harris*, 191 Okla. 125, 126 P. 2d 988; *O'Rourke v. Teeters*, 63 Cal. App. 2d, 349, 146 P. 2d 983. See also *Schleifer v. Zoning Board of Adjustment*, 374 Pa. 277, 97 A. 2d 782.

This brings us to a consideration of the question whether the variance in this case was properly refused by the Board of Adjustment because of failure of the applicants to establish the existence of any unnecessary hardship. Michener attempted to prove such hardship by testimony that Township Line Road had been widened since he originally moved to the property and had

---

* *Landell v. Hamilton*, 175 Pa. 327, 337, 34 A. 663, 666; *Hunter v. Wood*, 277 Pa. 150, 152, 120 A. 781, 782; *Henry v. Eves*, 306 Pa. 250, 259, 260, 159 A. 857, 859, 860; *Katzman v. Anderson*, 359 Pa. 280, 285, 286, 59 A. 2d 85, 87, 88.

become a main artery of travel; that there were high-speed trolley lines on West Chester Pike which intersects with Township Line Road some 400 feet to the west of his property; that thousands of vehicles pass the intersection of these two highways daily and some of them occasionally block the entrance to the property while waiting to proceed across the intersection; that there is a gas station at the intersection on the same side as his property and another one at the opposite corner. There was also testimony to the effect that across Township Line Road, which separates Haverford Township from Upper Darby Township, there are some business establishments and an alleged general commercial trend. A real estate agent testified that he had attempted for over seven months to sell Michener's property as a residence but had not received any offers. Michener's chief complaint was that across Township Line Road was a diner which was open 24 hours a day, that it catered to the trade of truckers who indulged in loud and boisterous talk which, added to the clatter of dishes and the music from a juke box, caused such disagreeable noise that finally, because of this and the other conditions referred to, he was obliged to move to another location.

It should be at once evident that none of the complaints thus asserted made out a case for the proper grant of a variance by the Board of Adjustment. The operation of the trolley cars, the increase in vehicular traffic, the fact that perhaps the district was no longer exclusively residential,—all these conditions did not constitute any hardship which especially affected the Michener property; on the contrary they applied to the entire area. The law is well established that a variance may be granted only where a property is subjected to a hardship unique or peculiar to itself as distinguished from one arising from the impact of the zon-

ing regulations on the entire district. If the Michener property was no longer as attractive for a residence as when he first occupied it, the same changes affected all of his neighbors and all of the persons in the district alike.

In *Clark v. Board of Zoning Appeals,* 301 N.Y. 86, 90, 91, 92 N.E. 2d 903, 904, 905, it was said that "before the board may vote a variance, there must be shown, among other things, 'that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself.' The board, being an administrative and not a legislative body, may not review or amend the legislatively enacted rules as to uses, or amend the ordinance under the guise of a variance, . . . or determine that the ordinance itself is arbitrary or unreasonable. . . . If there be a hardship, which . . . is common to the whole neighborhood, the remedy is to seek a change in the zoning ordinance itself. . . . Nothing less than a showing of hardship special and peculiar to the applicant's property will empower the board to allow a variance. . . . The substance of all these holdings is that no administrative body may destroy the general scheme of a zoning law by granting special exemption from hardships common to all."

In *Beck v. Board of Adjustment of City of East Orange,* 15 N.J. Super. 554, 563, 83 A. 2d 720, 725, it was said that "the circumstances affecting the land in question must be unique as distinguished from conditions that affect the whole neighborhood, . . . ."

In *Brackett v. Board of Appeal of Building Department of City of Boston,* 311 Mass. 52, 58, 39 N.E. 2d 956, 960, it was said: "If there is a general hardship, this situation may be remedied by revision of the gen-

eral regulation, and not by granting a special privilege of a variation to single owners."

In *Lumund v. Board of Adjustment of Borough of Rutherford,* 4 N.J. 577, 582, 583, 73 A. 2d 545, 548, it was said that "a finding of 'unnecessary hardship' to an individual owner, due to 'special conditions' is a *sine qua non* to the exercise of the board of adjustment's authority to grant a variance from the terms of the ordinance, and that if the difficulty is common to other lands in the neighborhood so that the application of the ordinance is general rather than particular, the remedy lies with the local legislative body or in the judicial process to attack the validity of the ordinance itself. That philosophy is in accord with the generally accepted view, . . . ."

If a Zoning Board were to be allowed to grant variances to individual properties because of changes in the district which might perhaps call for a complete reclassification, it would, by such a piece-meal process, be virtually enacting zoning legislation instead of merely performing its function of administering the zoning law prescribed by the governing body of the municipality, in this case the Township Commissioners. As a matter of fact, the court below, in its final opinion, said that "to apply this law to the instant case would suppose that the tract covered by the restriction against stores has changed in its character and that the restriction has not been enforced. Such is not the case; from the testimony, we find no evidence which would indicate that this tract is not wholly residential, with the exception of the gas station at the corner of County Line Road and West Chester Pike. The only change in character is outside of the restricted tract." But even if the applicants were justified in their contention that the neighborhood had changed somewhat from residential to commercial, that fact would not,

for the reason stated, justify the allowance of a variance by the Board of Adjustment but only, at best, a call upon the Township Commissioners to re-zone the district.

The only complaint made by Michener that might be said to apply peculiarly to his own property—although even that is doubtful—was the disturbing noise from the diner diagonally across Township Line Road which undoubtedly was an annoyance but certainly not a basis for the grant of a variance from the provisions of the zoning law; if it amounted to a nuisance the remedy was to have it restrained in proper equity proceedings. Although Michener moved from the house Bierkamp stated it was his intention, if he took over the property, to live there with his family, and indeed appellant has meanwhile leased the property to a tenant who now resides there, so the house is obviously far from being uninhabitable. Moreover, it must be borne in mind that, as stated in *Dunlap Appeal*, 370 Pa. 31, 34, 87 A. 2d 299, 301: "It has never been the rule that a zoning ordinance must permit each owner to make *maximum* use of his property," and even if it might become more difficult for an owner to sell a property because of neighborhood changes, that would not furnish ground for the grant of a variance: *Pincus v. Power*, 376 Pa. 175, 179, 101 A. 2d 914, 916.

The Board of Adjustment properly refused a variance in this case, and, since it was certainly not guilty of any manifest and flagrant abuse of discretion, its action could not properly be reversed: *Jennings' Appeal*, 330 Pa. 154, 157, 198 A. 621, 622; *Anderle Appeal*, 350 Pa. 589, 591, 39 A. 2d 829, 830; *Berman v. Exley*, 355 Pa. 415, 417, 50 A. 2d 199, 200; *Triolo v. Exley*, 358 Pa. 555, 558, 57 A. 2d 878, 880; *Reininger Zoning Case*, 362 Pa. 116, 117, 66 A. 2d 225, 226; *Roll-*

*ing Green Golf Club Case,* 374 Pa. 450, 458, 97 A. 2d 523, 527.

Decree affirmed at the cost of appellant.

———

OPINION BY MR. JUSTICE BELL, DISSENTING IN PART AND CONCURRING IN PART:

I would affirm this case on the Opinion of President Judge HENRY G. SWENEY.

The majority opinion correctly states, "If these applicants were to succeed in obtaining a variance relieving them from the restrictions of the zoning ordinance they would still be subject to the restrictions contained in their deeds, but the enforcement of those restrictions could be sought only in proceedings in equity in which the grantors, their representatives, heirs and assigns, would be the moving parties."

The net result of the majority opinion is this: A Judge sitting in the Court of Common Pleas can grant a variance to a property owner in defiance and in violation of the building restriction on his lot or any other covenant running with the land. One day later the same Judge, sitting in the same chair and in the same courtroom will be compelled to grant an injunction sur a complaint by the owner of the dominant tenement to restrain the servient property owner from doing exactly what he authorized him to do one day before.* The feelings of the property owner in such eventuality can be easily imagined!

———

* Moreover, inevitable damage to someone will frequently result from the majority opinion in cases where the dominant owner does not learn that a variance has been granted until a month has elapsed and in the meantime the servient owner or purchaser has spent a considerable amount of money on the faith of the Court's decision.

I am fundamentally opposed to any decision, the effect of which is to impair or diminish, even though entirely unintentionally, the prestige and high reputation of our Courts. For these reasons I dissent from a part of the majority opinion, and I would hold that the building restriction, unless it was waived, abandoned, released or lost, barred the grant of a variance in violation thereof.**

However, I agree with Chief Justice Stern, for the reasons he has so convincingly set forth, that no unnecessary hardship, as that term is known to the law, was proved by the plaintiffs and consequently this is an additional reason why the application for a variance was properly refused.

---

** This principle would not violate, as the majority imply, any rule or decision in Pennsylvania, technical or otherwise. The person seeking a variance would merely have to *first* bring a proceeding in equity to have the restriction judicially declared to be no longer valid and subsisting; or he could produce in the Court of Common Pleas in the "variance" proceeding a release of the restriction.