### English, Appellant, *v.* Zoning Board of Adjustment.

Argued January 7, 1959; reargued January 15, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and McBRIDE, JJ.

*Robert W. Tredinnick*, with him *Smillie, Bean, Davis & Tredinnick*, for appellants.

*Robert W. Honeyman*, with him *Fox, Differ & Honeyman*, for appellee.

OPINION BY MR. JUSTICE COHEN, March 16, 1959:

Plaintiffs (neighbors of the applicant) protest the order of the lower court affirming the grant of a variance by the board of adjustment. The variance permitted the applicant to operate a beauty shop in a dwelling located in a "B" Residential District in Norristown.

The premises in question is one of three double dwellings on the north side of the 1200 block of West Main Street. The north side of that block consists of the three double dwellings, a well kept vacant lot and a corner property occupied by the Hamilton Hotel. On the south side of the 1200 block of West Main Street and opposite the applicant's property is a large modern super market and an extensive paved parking area; to the west of the super market is a nursing home. The north side of the 1100 block of West Main Street is made up of ten (10) residential buildings, four (4) of which are occupied in part by medical offices and a photographer's studio. The south side of the 1100 block of West Main Street is also made up of a mixture of residential and commercial uses. It is readily apparent from these facts that the applicant's property is in a mixed residential and commercial area. The lower court described this area as "boundary blight, a form of economic disease which attacks unwisely zoned real estate." The opinion emphasizes "boundary blight" and the need for changes and modifications in marginal areas which "judged by the standards of ordinary

common sense and justice . . ." requires the conclusion of the board in granting the variance.

This is not a very involved zoning problem. The applicable law is simple and is governed by *Michener Appeal,* 382 Pa. 401, 115 A. 2d 367 (1955), where we held that before a variance may be granted by the board it must be shown that the circumstances that affect the land are unique and applicable to that land alone and are not conditions that affect the whole neighborhood. Only a hardship peculiar to the applicant's property merits an allowance of a variance. If there is a general hardship the situation should be remedied by a revision of the general zoning regulation, not by the grant of a special privilege to single owners.

The lower court maintained that the condition here present dealt with neighborhood changes that did not affect all of the property in the district, but changes that imposed a hardship only on a small group of double dwellings on West Main Street. The lower court said, the changed conditions being a proper subject for amelioration "do not call for a complete reclassification. They do, however, strongly call for a measure of relief along this short section of the border of the district." The court then proceeded to affirm the board's grant of relief.

The lower court erred in improperly concluding that the changed conditions worked a hardship only on a small group of double dwellings on West Main Street. The evidence indicates that the uses of all the properties in the areas in proximity to applicant's property are affected by the invasion of commercial enterprises. The areas in question are now subject to increased traffic, increased noise and varied commercial and professional endeavors. That the entire area has, with the influx of commercial activities, become less desira-

ble for the purposes for which it was originally zoned is recognized. This whole section calls out for a complete reclassification. Still this need of re-zoning does not permit the grant of a variance to a single property.

This is the situation that Chief Justice HORACE STERN cautioned against in *Michener Appeal* at page 408: "If a Zoning Board were to be allowed to grant variances to individual properties because of changes in the district which might perhaps call for a complete reclassification, it would, by such a piecemeal process, be virtually enacting zoning legislation instead of merely performing its function of administering the zoning law prescribed by the governing body of the municipality. . . ."

The instant case in no way parallels or simulates the situation in *Nicholson v. Zoning Board of Adjustment*, 392 Pa. 278, 140 A. 2d 604 (1958) where we granted a variance. In *Nicholson* we had the peculiar condition where a peninsula of unused residentially zoned property jutted into an area of commercially zoned property. We sustained the grant of a variance because there the applicant had met the burden of proving hardship unique or peculiar to his particular property.

We can't help but comment that the judicial and quasi-judicial bodies are at times subject to an unrestrained temptation to re-zone the marginal areas because of the economic changes which occur in a community. The court in concluding its opinion affirming the grant of a variance by the board made the following observation: "The legal soundness of the decision of the Norristown Board of Adjustment in this case may be open to question, but the statesmanship of the decision is sound."

The obligation of the members of Norristown Board of Adjustment was not to be statesmen; their obliga-

tion was to enforce the zoning ordinance in accordance with the applicable law. Their action demonstrates that where the legislative bodies have failed to revise existing zoning legislation they hold out to the board the temptation to act as statesmen rather than instrumentalities through which the zoning law is applied.

A zoning ordinance is never finally concluded. It is a type of legislation which the appropriate legislative bodies must continuously modify and amend. The legislative bodies must be alert to the developments which are constantly occuring in their communities which increase or decrease the commercial, residential or industrial desirability of particular areas. It is the responsibility of the proper legislative authorities to keep abreast of the changes so that zoning ordinances do not become obsolete but realistically reflect the changes which occur in the community. Even though the temptation be great if the legislative body fails to act, still the legislative function does not pass to the zoning board of adjustment.

Order reversed.