# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Jenkins,                                            :
                              Appellant                   :
                                                          :
              v.                                          :    No. 1470 C.D. 2014
                                                          :    Argued:  May 4, 2015
City of Philadelphia                                      :


BEFORE:       HONORABLE BERNARD L. McGINLEY, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
JUDGE LEADBETTER                           FILED:  August 3, 2015


              Brian Jenkins, Pastor of Chosen 300 Ministry (Appellant), appeals the order of the Court of Common Pleas of Philadelphia County which affirmed the decision of the Philadelphia Zoning Board of Adjustment (ZBA) granting the application for variance for Greenway LLC (Greenway) for its proposed mixed-use development at its property located at 1106-1114 Spring Garden Street and 516 North 11th Street in Philadelphia (the Property).  After review, we reverse.

              On September 20, 2013, Greenway filed an application with the Philadelphia Department of Licenses and Inspections (L & I) for a zoning/use registration permit for a proposed relocation of lot lines to create one lot from six deeded lots at the Property and for the erection on the consolidated parcel of a five story mixed commercial/residential building with accessory parking, bicycle

spaces and roof decks. The Property currently has an existing building that formerly housed the Lawsonia Furniture Manufacturing and Refinishing Company which is two stories fronting on Spring Garden Street and one story in the rear. The proposed development would construct a three story addition over the current two story portion of the building and a four story addition over the current one story portion of the building. The resulting five story building would consist of retail commercial use on the ground floor and forty residential units on floors two through five, with the fifth floor units having privately accessed roof decks. The Property would also contain 17 parking spaces and 12 bicycle spaces. Greenway's plan involved excavating the rear of the property to construct below grade parking for 14 cars, with three more at surface level. Access to the property would be from North 11th Street, through a descending driveway/ramp into the garage and would include a new curb cutout approved by the Philadelphia Streets Department.

L & I denied Greenway's application for a zoning/use registration permit because the proposed development did not meet the requirements of the Property's I-2 Industrial zoning classification.[1] Specifically, L & I determined that: 1) dwelling units and 2) retail commercial uses are not permitted in an I-2 district;[2] 3) a minimum of 20 parking spaces are required whereas Greenway only

---

[1] The Philadelphia Zoning Code divides the City into classes of districts designated as Base Zoning Districts (Chapter 14-400) and Overlay Zoning Districts (Chapter 14-500). *See* § 14-106 of the Zoning Code. Under § 14-403, Industrial and Industrial Mixed-Use Districts, the I-2, Medium Industrial District, "is primarily intended to accommodate light industrial uses, moderate-impact uses, and employment activities such as manufacturing, distribution, processing, industrial parks, and other activities that may generate noise, odor, vibration, after hours activities, or traffic impacts well beyond the subject property lines." § 14-403(1)(c)(.4).

[2] Under §§ 14-403(2) and 14-602(5) of the Zoning Code, uses permitted as of right in industrial districts are set forth in Table 14-602-3, and include: Caretaker quarters; passive recreation; safety services; transit station; basic and major utilities and services; wireless service facility; business and professional office; medical, dental, health group practitioner; government **(Footnote continued on next page…)**

2

proposed 17;[3] and 4) a minimum of 13 bicycle spaces are required whereas Greenway only proposed 12.[4]

Greenway appealed to the ZBA for use and dimensional variances, and a public hearing was held on November 13, 2013. After reviewing the specifics of its proposal, Greenway's attorney argued that the Property's current I-2 industrial zoning classification was no longer viable for the following reasons: 1) the building has been vacant for about ten years; 2) adjacent to the Property is a mixed-use CMX-3 district;[5] 3) other residential projects in the neighborhood have recently been approved by the ZBA; and 4) there are currently no existing industrial uses in the neighborhood. ZBA Hearing, N.T. at 2-10. With respect to the variance needed for the parking spaces, Greenway's attorney explained that

_____

(continued…)
office; building supplies and equipment; animal services; building services; business support; financial services; maintenance and repair of consumer goods; marina; non-accessory parking; radio, television, and recording services; commercial vehicle repair and maintenance; commercial vehicle sales and rental; personal vehicle repair and maintenance; personal vehicle sales and rental; gasoline station; vehicle paint finishing shop; equipment and materials storage yards and buildings; moving and storage facilities; warehouse; wholesale sales and distribution; artists' studios and artisan industrial; limited industrial; general industrial; research and development; trucking and transportation terminals; community gardens; market or community-supported farm; animal husbandry; horticulture nurseries and greenhouses.

[3] *See* Table 14-802-3, Required Parking in Industrial Districts.

[4] At the hearing before the ZBA, Greenway submitted revised plans which added two more bicycle spaces, bringing the total up to 14, one above the minimum required. As a result, Greenway no longer needed a variance with regard to bicycle spaces. *See* City of Philadelphia, Zoning Board of Adjustment, Public Hearing, November 13, 2013, Notes of Testimony (N.T.) at 4.

[5] Pursuant to the Zoning Code, Commercial and Commercial Mixed-Use Districts "are primarily intended to accommodate and promote neighborhood-, community- and region-serving commercial uses, as well as mixed-use development consisting of commercial and residential uses in the same building or on the same site." § 14-402(1)(b). CMX-3 is the Community Commercial Mixed-Use District that is "primarily intended to accommodate community- and region-serving retail and service uses." § 14-402(1)(c)(.4).

3

due to structural limitations, it could only accommodate fourteen parking spaces in the garage with three more at street level. Testimony from Jeremy LeCompt of Harman Deutsch Architecture, the project architect, was that a single curb cut would be constructed on 11th street, and the rear yard would be excavated approximately six and one-half feet to allow the driveway/ramp from the street into the newly constructed garage at the rear of the building. *Id.* at 17, 22-23.[6]

Testifying in opposition to the proposal, Appellant stated that he is the founder and Pastor of Chosen 300 Ministry located at 1116 Spring Garden Street, adjacent to the Property, and that he ministers to the homeless, which includes not only worship services, but meals, computer training, as well as expungement and other necessary services.[7] Appellant testified that his primary objection to Greenway's proposal is the residential aspect of the project, explaining that he had purposely located his ministry in an industrial district because of frequent "opposition in the City" to homeless facilities being near residential neighborhoods. *Id.* at 11. Appellant testified that residential communities were not very accepting of the homeless, expressing concern with his ability to continue to minister to the homeless "with dignity and respect." *Id.* at 12. Appellant also objected on the ground that the proposal would create too much traffic entering and exiting the property on 11th street; that providing only 17 parking spaces was a problem in an already congested neighborhood; that the aluminum façade was not

---

[6] Greenway also presented letters of support/non-opposition from two Registered Community Organizations (RCOs), the Philadelphia Chinatown Development Corporation (PCDC) and the Callowhill Neighborhood Association (CNA), as well as a letter of non-opposition from City Councilman Mark Squilla. The Philadelphia Planning Commission advised the Board that it had no objection to Greenway's proposal.

[7] Appellant testified that he purchased this property in 2003 and obtained a variance to use the property as a place of worship. ZBA Hearing, N.T. at 23-24.

4

aesthetically pleasing; and that the excavation and construction at the Property would cause damage to his property.

The ZBA concluded that Greenway had met its burden of establishing entitlement to a variance to proceed with its proposed mixed-use development of the Property. Specifically, the ZBA found that the Property had been vacant and unused for ten years, that it was located in an industrial zoning district which was no longer compatible with industrial development, and that these factors were sufficient to establish the hardship necessary to support the grant of a variance. The ZBA also found that Greenway's plan provided for the maximum number of parking spaces given the constraints of constructing a garage within the original structure; that the project met all other dimensional requirements applicable to the district; that it was compatible with the surrounding neighborhood; and that the requested variance was the minimum necessary to afford relief. Finally, the ZBA concluded that the record established that "the proposed uses would not have a detrimental impact on the public health, safety or welfare" and that "the project would return a long vacant property to productive use, establish a new use that is compatible with the surrounding neighborhood and preserve the existing building's façade." Findings of Fact and Conclusions of Law of the ZBA (November 13, 2013) at 6.

Appellant appealed, and the trial court, having taken no additional testimony, affirmed. Appellant has now appealed to this court.[8]

---

[8] Where the trial court takes no additional evidence, our review is limited to determining whether the ZBA committed an error of law or abused its discretion. *Valley View Civic Assoc. v. Zoning Bd. of Adjust.,* 462 A.2d 637, 639 (Pa. 1983); *see also* 2 Pa. C.S. § 754(b). An abuse of discretion may be found if the Board's findings of fact are not supported by substantial evidence. *Larsen v. Zoning Bd. of Adjust. of the City of Pittsburgh,* 672 A.2d 286, 289 (Pa. 1996).

Appellant contends that the ZBA abused its discretion or committed an error of law in granting the variance to Greenway because there was no evidence in the record to support its decision and specifically, there was no evidence in the record that any unnecessary hardship would result if the variance were denied. Arguing that establishing an unnecessary hardship is "the most fundamental prerequisite for obtaining a variance," Appellant avers that Greenway did not submit any evidence establishing a unique hardship of the Property, such as evidence that the Property could not be used for any of the uses permitted in an I-2 district or that there were attempts to sell the property over the years. Appellant's Brief at 11. Finally, Appellant argues that "[m]ere vacancy alone" is insufficient to demonstrate an unnecessary hardship. *Id.* at 12. We agree.

Section 14-303(8)(e) of the Zoning Code sets forth the specific criteria that must be met before the ZBA may grant a variance, which essentially boils down to three key requirements: 1) that there is a unique hardship to the property; 2) that there is no adverse effect on the public health, safety or welfare; and 3) that it is the minimum variance that will afford relief at the least modification possible. *Marshall v. City of Phila.,* 97 A.3d 323, 329 (Pa. 2014) (citation omitted). The reasons for granting a variance must be substantial, serious and compelling, and the party seeking the variance bears the burden of proving that an unnecessary hardship will result if the variance is denied and that the proposed use will not be contrary to the public interest. *Valley View Civic Assoc. v. Zoning Bd. of Adjust.,* 462 A.2d 637, 639 (Pa. 1983). The hardship must be unique or peculiar to the property at issue, and not one that arises from the impact of the zoning regulations on the entire district. *Id.* When evaluating whether a hardship exists, the use of adjacent and surrounding land is unquestionably relevant. *Id.* In *Hertzberg v.*

6

*Zoning Board of Adjustment of the City of Pittsburgh,* 721 A.2d 43, 47 (Pa. 1998), our Supreme Court held that an unnecessary hardship is established by evidence that: 1) the physical features of the property are such that it cannot be used for a permitted purpose; or 2) the property can be conformed for a permitted use only at a prohibitive expense; or 3) the property has no value for any purpose permitted by the zoning ordinance. However, as our Supreme Court explained in *Marshall,* "[s]howing that the property at issue is valueless unless the requested variance is granted 'is but one way to reach to a finding of unnecessary hardship; it is not the only factor nor the conclusive factor . . . [r]ather, 'multiple factors are to be taken into account' when assessing whether unnecessary hardship has been established." 97 A.3d at 330 (citing *Hertzberg,* 721 A.2d at 48).

With these standards in mind, and after a review of the record, we must conclude that the ZBA's findings that Greenway established unnecessary hardship entitling it to a variance are not supported by substantial evidence, and that it erred in granting the variances requested. Here, the sole testimony came from Greenway's architect, LeCompt, and was directed mainly to an explanation of how the support structures of the original building would prevent the excavation of the below grade garage to include only 14 parking spaces with three more above ground rather than the twenty parking spaces required by the Zoning Code. Although Greenway's attorney, Glenn Hing, also appeared and argued on its behalf, he offered only the following with respect to the issue of hardship unique to the Property.[9] Regarding the length of the Property's vacancy, Mr. Hing stated

---

[9] It is unclear from the notes of testimony before the ZBA exactly who was sworn in and testified as a witness, because while the notes begin with the following statement, "[w]hereupon, all testifiers, having been duly sworn, according to law, were examined and testified as follows:" immediately thereafter was a brief greeting by the chairperson, followed by Mr. Hing's opening **(Footnote continued on next page…)**

that, "[t]he entire building has been vacant for about ten years." ZBA Hearing, N.T. at 6. With respect to the Property's location in an I-2 Industrial District, which does not allow the residential and retail uses Greenway is proposing, he made the following statement:

> [w]e feel, basically, the use of this project is consistent with the neighborhood as it currently stands and as it's being developed. Even though it is an industrial zoned area, *there have not been, at least as I can recall, any industrial uses that have moved into this area or so existing there.*

*Id.* at 9 (emphasis added). Mr. Hing also pointed out that the ZBA had recently approved a "very similar" development nearby and that the Property is adjacent to a CMX-3 district, which would allow the type of mixed-use development Greenway is proposing. *Id.* at 10. However, photographs submitted at the hearing show a number of uses across the street from the Property also in an I-2 Industrial District, including a gas station, an auto repair shop, a combination car wash/lube and oil change business, and a large church edifice. *See* ZBA Hearing, Exhibit B, Photographs (Exterior), Certified Record Item 9.

---

**(continued…)**
statement. The Zoning Code sets forth the parameters of public hearings before the ZBA, including who may testify. Section 14-303(14) of the Zoning Code, Public Hearings of the ZBA, provides that:

> (f) Except as provided in § 14-303(14)(g) below, any person may appear in person or by an attorney, and may be accompanied by a family member or translator. Statements by a person's attorney on his behalf shall not be considered as testimony, except where agreed upon by the parties.
> (g) Any corporation, including an incorporated non-profit, that is the applicant in the matter before the Zoning Board shall be represented by an attorney at the public hearing on that matter before the Zoning Board.

In *Philadelphia Zoning Board of Adjustment v. Earl Scheib Realty Corp.,* 301 A.2d 423, 425-427 (Pa. Cmwlth. 1973), a case with a similar dearth of evidence, which included a mere eight pages of testimony and some photographs of the general area surrounding the property, this court concluded that, while the [then] Code permitted an attorney's statements to be considered as testimony, its review of the "assurances of [the applicant's] attorney," offered as they were in support of establishing a hardship unique to the property at issue, "hardly can be considered a meeting of the burden placed upon the [applicant/appellee]." The fact that neither the neighborhood nor the civic associations protested the granting of a variance "did not relieve the applicant of its burden of proof." *Id.* at 426. Indeed, even where the property is vacant or the building at issue is vacant, as is the case herein, we have required more than just vacancy itself to supply the necessary finding of hardship. *See e.g., South of South St. Neighborhood Assoc. v. Phila. Zoning Bd. of Adjust.,* 54 A.3d 115, 122 (Pa. Cmwlth. 2012) (ZBA reasonably concluded that applicant's sustained but unsuccessful attempt to sell the property for five years for an industrial use and on which stood a vacant building established an unnecessary hardship); *Wagner v. City of Erie Zoning Hearing Bd.,* 675 A.2d 791, 794 (Pa. Cmwlth. 1996) (vacancy of the building and the difficulty with which it sold evidenced an unnecessary hardship); *Davis v. Zoning Bd. of Adjust.,* 468 A.2d 1183, 1185 (Pa. Cmwlth. 1983) (vacant pre-existing structure could not be employed for permitted use without demolition and extensive reconstruction established an unnecessary hardship); *Scott v. Zoning Bd. of Adjust.,* No. 2363, 2015 Phila. Ct. Com. Pl. LEXIS 121 (C.P. Phila. May 18, 2015) (testimony and evidence established that the property had been vacant for some time, that applicants unsuccessfully attempted to market the property for one year

9

for zoning compliant purposes, and testimony as to the prohibitive cost to remove the structure and remediate the soil all held sufficient to establish hardship).

Here, Greenway wishes to develop the Property for uses that are not permitted in an I-2 Industrial District, on the ground that the entire neighborhood is changing, presumably away from its industrial character and toward a more mixed-use character, which is amenable to the type of project it proposes. While *South of South Street* is cited for the proposition that "the course of time may effect changes to [a] property and the surrounding area, which may result in the creation of an unnecessary hardship that did not previously exist," this is not such a case, at least not from an evidentiary standpoint.

First, although counsel stated that the property had been vacant for about ten years, this is not sufficient, standing alone, to establish hardship. In *South of South Street,* hardship was found based on evidence of five years' unsuccessful attempts to market the property for a permitted use, with no offers. Here, there simply was no evidence of whether or not there was an attempt to market the property. Further, Greenway made no attempt to prove that there was no market for the other permitted uses, such as business and professional offices (see n.2 above) other than counsel's conclusory statement that the current zoning classification was no longer viable. Nor was there any evidence that it would be more costly to develop the property for such uses than for the one proposed.

Indeed, the neighborhood may be changing, and the proposed development may well be an asset to the community. Nonetheless, any hardship that arises when outdated zoning prohibits the most productive use of property affects the entire neighborhood and is not unique to the property for which a variance is sought. As has been noted:

10

> Most of the rules which limit variances are designed to keep the variance power from growing to a general legislative power. This is the central problem in variance law. It is reflected in the concept that the hardship which justifies a variance must not be merely that hardship which results of necessity from a valid zoning regulation [§ 6.2.5]; in the requirement that a property be "uniquely" affected in order to justify a variance [§ 6.2.7].

Robert S. Ryan, Pennsylvania Zoning Law and Practice § 6.1.3 (2001). As our Supreme Court long ago stated:

> If a Zoning Board were to be allowed to grant variances to individual properties because of changes in the district which might perhaps call for a complete reclassification, it would, by such a piece-meal process, be virtually enacting zoning legislation . . . .

*Michener Appeal*, 115 A.2d 367, 371 (Pa. 1955). Therefore, the more appropriate avenue for relief on these facts would be for Greenway to seek a change to the zoning, in which the specific criteria attendant to such a proposal could more properly be addressed. *See Sposato v. Radnor Twp. Bd. of Adjust.,* 270 A.2d 616, 618 (Pa. 1970); *O'Neill v. Zoning Bd. of Adjust. of Phila.,* 254 A.2d 12, 16 (Pa. 1969); *see also Kamin v. Zoning Bd. of Adjust. of the City of Pittsburgh,* Pa. Cmwlth., No. 485 C.D. 2009, filed January 7, 2010, Pa. Commw. Unpub. LEXIS 152.[10]

---

[10] We do not believe that our Supreme Court's decision in *Marshall* compels a different result, as that case involved the question of whether the applicant was entitled to a variance to convert a legally non-conforming use [a school building], located in a [then] R-10 residential district, into an apartment residence for low-income senior citizens. Indeed, in agreeing with the ZBA's grant of a variance, Justice McCaffery found that the hardship lay in the uniqueness of the building itself as a legally non-conforming use and that the cost to convert the building to a permitted use was prohibitive, factors simply not shown here.

Accordingly, based on the evidence of record, we reverse the trial court's order affirming the decision of the ZBA to grant a variance to Greenway.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Jenkins,                          :
                    Appellant          :
                                       :
            v.                         :      No. 1470 C.D. 2014
                                       :
City of Philadelphia                   :

# **O R D E R**

AND NOW, this 3rd day of August, 2015, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby REVERSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge