IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brenda A. Johnston,      :
     Appellant   :
            :
   v.        :
            :
East Greenville Borough    :  No. 376 C.D. 2020
Zoning Hearing Board     :  Argued: March 18, 2021

BEFORE:  HONORABLE MARY HANNAH LEAVITT, Judge
      HONORABLE CHRISTINE FIZZANO CANNON, Judge
      HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON    FILED: April 16, 2021

    Brenda A. Johnston (Johnston) appeals from the December 16, 2019 Order of the Court of Common Pleas of Montgomery County (trial court) affirming the April 9, 2019, decision of the Zoning Hearing Board of the Borough of East Greenville[1] in Montgomery County (Board). The Board denied Johnston's application for a use variance from the East Greenville Borough Zoning Ordinance (Ordinance) to permit Johnston to convert a ground floor commercially zoned space to a residential apartment. Upon review, we affirm the trial court's order.

---

[1] By letter to this Court dated October 5, 2020, the Borough Council declined to participate in this matter.

## Background

In 2006, Johnston acquired the property at 224-226 Main Street in the Borough of East Greenville in Montgomery County. Reproduced Record (R.R.) at 4a. The property is in the Borough Commercial District (commercial district). *Id*. On the property is a two-family twin residential building comprised of 224 Main Street, for which Johnston seeks the variance, and 226 Main Street, for which Johnston is not seeking a variance. *Id*. at 95a-96a & 99a; *see also* Borough of East Greenville, Pa., Ordinance No. 4-96, § 95-11B(1) (Dwelling Types) (June 18, 1996).[2]

Both halves of the building have commercial spaces on the ground floor and apartments on the upper floors. R.R. at 4a. These spaces are governed by Section 95-71V of the Ordinance, which allows apartment conversions in the commercial district only where the ground floor is reserved for commercial use. Ordinance § 95-71V.[3] Notwithstanding this limitation, in January 2019, Johnston sought a use variance to convert the ground floor space of 224 Main Street from commercial use to an apartment. R.R. at 5a.

The ground floor commercial space of 224 Main Street, which is about 900 square feet in size, was vacant when Johnston bought the property in 2006. R.R. at 127a-28a & 130a. There have been three commercial enterprises in the space

---

[2] "A two-family building with dwelling units placed side by side, with each occupying the total space from ground to roof and joined to each other by a vertical, common party wall, but otherwise surrounded by yard areas. When lotted, each dwelling unit may be on a separate lot, with the common boundary between the two lots running along the common party wall. Separate ingress and egress is provided to each unit." Ordinance § 95-11B(1).

[3] "In the Borough Commercial District, a building may be erected, altered or used and a lot may be used or occupied for any of the following uses and no other: . . . Apartment conversions, provided that all residential units are located above a commercial use. [Amended 3-2-1998 by Ord. No. 98-6]." Ordinance § 95-71V.

since then, but it has not had a tenant in two years. *Id*. at 97a & 128a. The space had been advertised for commercial rental with multiple listing sources in Montgomery, Lehigh, and Berks Counties, and also online, but received only three unsuccessful "bites" for rental in recent months. *Id*. at 98a; *see id.* at 50a. Johnston testified that local economic conditions make it "very difficult" to rent for commercial use. *Id*. at 98a & 128a.

Johnston's property is in the commercial district but is located just 3-4 parcels away from the Borough Residential (BR) zone and across the street from the Residential (R-1) zone. R.R. at 52a & 103a-04a. According to Johnston and her real estate expert, Steven Rothenberger (Rothenberger),[4] the conversion would not have a negative visual impact on the neighborhood because it already looks like a house and that would not change. *Id*. at 120a; *see id*. at 54a-62a & 107a-08a. It would also be the least possible modification to the current provisions of the Ordinance. *Id*. at 122a.

Johnston also argued at the hearing that the building's noncompliance with the Americans with Disabilities Act of 1990 (ADA)[5] further complicates commercial rental opportunities. The front of the building lacks an ADA-compliant ramp, which to Rothenberger limits its viability as a commercial space. R.R. at 61a & 108a. Rothenberger opined that "major renovations" would be needed to make the space more accessible. *Id*. at 108a. By contrast, a residential property with fewer than four units would not require ADA compliance. *Id*. at 126a.

---

[4] Rothenberger has been in the local real estate business since 1982 and in the immediate area for the past four years. R.R. at 99a-100a. He has previously been qualified as an expert witness in real estate in both Montgomery and Berks Counties and the Board accepted him as an expert for this proceeding. *Id*. at 100a-01a. He has no professional or financial interest in Johnston's property. *Id*. at 122a.

[5] 42 U.S.C. §§ 12101-12213.

Rothenberger presented photographs and real estate listings comparing 224 Main Street with nearby properties in the commercial district that have also been vacant and available for lease for lengthy time periods. R.R. at 54a-55a, 64a-65a, 70a-71a, 75a-78a, 105a, & 110a-18a. Rothenberger averred: "[t]here's no call for commercial office space here." *Id*. at 115a-16a. He explained that demand is "very limited" and turnover and vacancies are high. *Id*. at 118a.

There was no testimony at the hearing in opposition to Johnston's requested variance. James Raftery (Raftery), a lifelong area resident and the Borough Council Vice President, stated that since the property was rezoned about 20 years ago,[6] "times have changed, things have changed," and that the rise of large retailers like Walmart and online retailers like Amazon "drove the small shops out" of areas like the commercial district. R.R. at 134a-35a. Raftery believes that the Borough "need[s] to look at some of these properties that have these form[s] of issues and consider relief. Otherwise, what could end up happening over a course of time is buildings being abandoned and walked away from." *Id.* at 135a. Raftery suggested that the Board consider granting Johnston's variance request. *Id.*

In addition, a letter from the East Greenville Borough Planning Commission (Planning Commission) to the Board was also entered into evidence at the hearing, stating that the Planning Commission reviewed Johnston's application and voted 4-1 to recommend approval of the variance. R.R. at 48a.

At the close of the hearing, the Board denied Johnston's application because "a true hardship has not been proven." R.R. at 137a-38a. In its subsequent written decision, the Board explained that the commercial district was zoned with the intent to encourage "commercial uses and neighborhood services" and that the

_____

[6] Johnston's counsel confirmed that the Ordinance provision governing the property was enacted in 1998. Reproduced Record (R.R.) at 136a.

4

variance was at odds with that intent. Board Decision, 4/9/19, at 3 (pagination supplied); R.R. at 142a (quoting Ordinance § 95-70). The Board acknowledged Johnston's assertions that the primarily residential nature of 224 Main Street made it a poor fit for commercial use, but found that Johnston's property was "not unique in this regard but similar to many others in the area," including other residential buildings that also have ground floor commercial spaces. Board Decision at 2; R.R. at 141a. The Board therefore concluded that Johnston's alleged hardship was not specific to her property, but rather "is the condition generally created by the Ordinance which impacts all of the properties in the [commercial district]." Board Decision at 3-4; R.R. at 142a-43a.

Johnston appealed to the trial court, which held argument but took no further evidence. Trial Ct. Op., 6/30/20, at 4. The trial court affirmed the Board's denial of Johnston's requested variance, generally deferring to the Board's fact-finding role and agreeing with the Board's determinations and conclusions. *Id.* at 14-19. Johnston then appealed to this Court.

## Issues on Appeal

On appeal,[7] Johnston argues that the Board's findings and conclusions were not supported by substantial evidence and that the Board erred in finding "mere

---

[7] Where the trial court did not take any additional evidence, appellate review of the decision of a zoning board is limited to determining whether the board abused its discretion or committed legal error. *Township of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009). An abuse of discretion occurs when a zoning board's findings are not supported by substantial evidence in the record. *Id.* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the conclusion reached. *Id.* The reviewing court may not substitute its interpretation of the evidence for that of the zoning board, which has "expertise in and knowledge of local conditions." *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 9, 13 (Pa. Cmwlth. 2015). Even if the reviewing court might come to a different conclusion, if the zoning board's determination is supported by substantial evidence, it may not be disturbed.

5

economic hardship as a result of the impact of the zoning regulation that impacts the entire district, rather than a hardship due to the unique physical characteristics of [her] property[.]" Johnston Br. at 3. Therefore, Johnston asserts that the trial court erred in affirming the Board's decision. *See id.*

## Analysis

"A variance is an extraordinary exception and should be granted sparingly[.]" *Heisterkamp v. Zoning Hearing Bd. of Lancaster*, 383 A.2d 1311, 1314 (Pa. Cmwlth. 1978). The burden on the applicant for a use variance is heavy. *Fairview Township v. Fairview Twp. Zoning Hearing Bd.*, 233 A.3d 958, 963 (Pa. Cmwlth. 2020). Because a use variance involves a "proposal to use the property in a manner that is wholly outside the zoning regulation," our courts have required strict proof without the relaxed standards that have been permitted for dimensional variances. *Hertzberg v. Zoning Bd. of Adjustment*, 721 A.2d 43, 47 (Pa. 1998). Generally, the fact that "the property may be used more profitably with the proposed use is not grounds for granting a variance." *Fairview Township*, 233 A.3d at 963; *see also Marshall v. City of Phila.*, 97 A.3d 323, 330 (Pa. 2014) ("evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance").

Section 95-200 of the Ordinance is adapted from Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

---

*SPC Co. v. Zoning Bd. of Adjustment of the City of Phila.*, 773 A.2d 209, 214 (Pa. Cmwlth. 2001). The zoning board's function is to weigh the evidence and it is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Id.* Further, the appellate court must view the evidence in a light most favorable to the prevailing party, which must be given the benefit of all reasonable inferences arising from the evidence. *Id.*

*See* Ordinance § 95-200. The applicant must show that: (1) the applicant's property is subject to unique physical conditions; (2) those conditions cause unnecessary hardship unreasonably inhibiting the property's usefulness; (3) the hardship is not self-inflicted; (4) granting a variance will not have an adverse effect on the public health, safety, or general welfare; and (5) the requested variance represents the minimum variance that will afford relief with the least modification possible. *Fairview Township*, 233 A.3d at 961 n.6 (citing 53 P.S. § 10910.2 and quoting *Twp. of E. Caln v. Zoning Hearing Bd. of E. Caln Twp.*, 915 A.2d 1249, 1252 (Pa. Cmwlth. 2007)).

Here, it is undisputed that granting the requested use variance will have no adverse effect on the neighborhood and that the request represents the minimum variance required to afford relief with the least modification possible. Thus, the fourth and fifth requirements for a use variance are not at issue. *See Fairview Township*, 233 A.3d at 961 n.6. Assuming, for purposes of this analysis, that Johnston also met the third requirement, lack of self-inflicted hardship,[8] it was still her burden to establish the first two requirements: that the property suffers from unique physical conditions and that those conditions have created an unnecessary hardship rendering the property unfeasible for use in its current commercial designation. *Id*.

---

[8] Although Johnston was aware of the zoning when she bought the property, neither the Board nor the trial court made any finding as to whether the hardship on the property, if any, was self-inflicted. "[T]he mere fact that one purchases property with knowledge of the hardship does not necessarily preclude a variance." *H. A. Steen Indus., Inc. v. Zoning Hearing Bd.*, 410 A.2d 386, 387 (Pa. Cmwlth. 1980). However, our disposition of this matter makes it unnecessary to determine whether Johnston satisfied this requirement. *See A & D, Inc. v. Zoning Hearing Bd.*, 379 A.2d 654, 657 (Pa. Cmwlth. 1977) (not necessary to decide whether variance applicant's hardship was self-imposed, where applicant otherwise failed to meet variance requirements).

Unnecessary hardship requires evidence demonstrating at least one of three alternatives: "'(1) the physical features of the property are such that it cannot be used for a permitted purpose;[9] (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property is valueless for any purpose permitted by the zoning ordinance.'" *See S. of S. St. Neighborhood Ass'n v. Phila. Zoning Bd. of Adjustment*, 54 A.3d 115, 121 (Pa. Cmwlth. 2012) (*SOSSNA*), *overruled in part on other grounds by Scott v. City of Phila.*, 126 A.3d 938, 950 (Pa. 2015) (quoting *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 812 (Pa. Cmwlth. 2005)). We consider each of the three alternative hardship elements in turn.

### (1) Physical Features of the Property

Johnston argues that the residential character of the space is, in and of itself, the physical feature that makes it unsuitable for commercial use. Johnston Br. at 12. Rothenberger testified that the lack of ADA accessibility and the layout of the space, with separate rooms and narrow hallways, are characteristic of a residence. R.R. at 108a & 121a. He opined that these conditions make the space unfeasible for retail use and of only limited feasibility as offices. R.R. at 108a & 121a. However, Johnston's own admissions belie these assertions. Johnston conceded that the space has had three commercial tenants since 2006 when she acquired the building. R.R. at 128a. She contends it is "very difficult" to rent it for that use now, *due to local economic conditions*. *Id*. at 98a & 128a.

The Board concluded that Johnston had not shown that "some unique feature of the property" bars the possibility of commercial use, stating: "This is borne out by the fact that the commercial space [has] been rented on previous

---

[9] As this element overlaps with the requirement that the property must have a unique character, we discuss both as a single requirement.

8

occasions to a variety of uses" during the time it has been commercially zoned. Board Decision at 4; R.R. at 143a. We find no error in the Board's statement, which is supported by evidence of record. Thus, the first alternative form of hardship, physical features that make commercial use impossible, has not been established.

### (2) Prohibitive Expense

In support of her position regarding the second alternative form of hardship, that conforming the space for commercial use would be prohibitively expensive, Johnston emphasizes the need to remedy the space's lack of ADA accessibility. Johnston Br. at 12. This would entail adding a ramp to the public entrance and addressing the narrow hall passages inside, which Johnston asserts would require "major renovations" in order to make the space conducive to commercial use. *Id*. at 12, 18, & 23-24.

Johnston did not, however, produce estimates or other evidence of the actual costs to conform the property for more advantageous commercial use. *Compare Allegheny W. Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 689 A.2d 225, 228 (Pa. 1997) (testimony estimating $2.5-3 million in costs of remediating contamination found to be substantial evidence of prohibitive expense), *and Wagner v. City of Erie Zoning Hearing Bd.*, 675 A.2d 791, 794 (Pa. Cmwlth. 1996) (evidence of estimates ranging from $750,000-$864,000 to bring property into compliance found sufficient evidence of prohibitive expense), *with Lay v. Zoning Hearing Bd. of Mun. of Bethel Park*, 432 A.2d 1146, 1148 (Pa. Cmwlth. 1981) ("[O]ur review of the record reveals that [the applicant] presented no evidence as to the cost of relieving the anticipated drainage problem or as to how much expense would be actually 'prohibitive[.]'").

9

In addition, as the trial court noted, the record before the Board revealed that the space had been rented out for commercial use "*without* remodeling or restructuring" three times since Johnston acquired it. Trial Ct. Op. at 13 (italics in original). Accordingly, Johnston failed to demonstrate that renovations were necessary and prohibitively expensive to use the property for a commercial use. Thus, the second alternative form of hardship has not been established. *Id*. at 12-13.

### (3) Valuelessness for Permitted Purpose

The remaining alternative form of hardship requires proof that the ground floor space of 224 Main Street is "valueless" as a commercially zoned property. *See SOSSNA*, 54 A.3d at 121; *Liberties Lofts LLC v. Zoning Board of Adjustment*, 182 A.3d 513, 534 (Pa. Cmwlth. 2018). Johnston's evidence emphasized that her building is and looks like a house and was used for residential purposes before its designation in 1998 as part of the commercial district. R.R. at 99a, 134a & 136a-37a. Johnston asked the Board to compare her building's primarily residential character with nearby properties, some of which are more commercial in nature, that have also been vacant and available for lease for at least a year. *Id*. at 54a-55a, 64a-65a, 70a-71a, 105a, & 110a-18a. In competition with those properties and in light of the neighborhood's marked commercial decline in recent years, Johnston asserts that her essentially residential space is unlikely to attract a commercial tenant. *Id*. at 121a & 130a. Even the current restaurant tenant in the ground floor of 226 Main Street on the other side Johnston's building on the property is leaving due to a lack of foot traffic and business. *Id*. at 96a.

Johnston combines her emphasis on the residential nature of her property with *SOSSNA*'s statement that "where a property may once have not been

burdened by an unnecessary hardship, the course of time may effect changes to that property and the surrounding area, which may ultimately result in the creation of an unnecessary hardship that did not previously exist." Johnston Br. at 16 (quoting *SOSSNA*, 54 A.3d at 120). Johnston avers that because her property is uniquely less feasible for commercial use than those that are already commercially configured and nonetheless struggling, she has established sufficient valuelessness. Johnston Br. at 13. Johnston argues that the physical circumstances of her property, specifically its primarily residential configuration, make her property valueless in and of itself rather than subject to "mere economic hardship" resulting from the impact of the zoning regulations on the entire commercial district.[10] Johnston Br. at 13-16, 18-19, & 22.

The Board expressly rejected Johnston's assertion that her property was unique within the commercial district due to its residential nature: "The neighborhood is a typical downtown mix of single and multiple family residential buildings with commercial storefronts on the first floor facing Main Street. [Johnston's property] is therefore not unique in this regard but similar to many others in the area." Board Decision at 2; R.R. at 141a. Likewise, although the Board acknowledged that the area experienced "difficulty" finding commercial tenants, "this is a circumstance that affects the entire [commercial district], not just the subject property. Board Decision at 3; R.R. at 142a. The trial court found the Board's determination to be sufficiently supported by the evidence and entitled to deference. Trial Ct. Op. at 8-10 & 12-15.

---

[10] In this regard, the factors affecting whether property suffers a unique hardship are interconnected with those affecting whether the property is valueless for a permitted purpose.

11

In *Appeal of Michener*, 115 A.2d 367 (Pa. 1955), the Court considered whether a residentially zoned property in Delaware County was eligible for a use variance to build a store, in light of changes to neighborhood conditions.[11] The applicant presented evidence that the street on which the property fronted had become a major artery of travel, that the area was experiencing a "general commercial trend," and that he had been unable to sell the property as a residence despite seven months of effort. *Id.* at 370. Our Supreme Court concluded that the conditions set forth by the applicant "applied to the entire area." *Id.* at 371. However, "a variance may be granted only where a property is subjected to a hardship unique or peculiar to itself as distinguished from one arising from the impact of the zoning regulations on the entire district." *Id.* The Court reasoned that even if the property was less attractive as a residence than when the applicant first occupied it, "the same changes affected all of his neighbors and all of the persons in the district alike." *Id.*

As a matter of policy, the Court noted:

> If a Zoning Board were to be allowed to grant variances to individual properties because of changes in the district which might perhaps call for a complete reclassification, it would, by such a piecemeal process, be virtually enacting zoning legislation instead of merely performing its function of administering the zoning law prescribed by the governing body of the municipality. . . . But even if the applicants were justified in their contention that the neighborhood had changed somewhat from residential to commercial, that fact would not, for the reason stated, justify the allowance of a variance by the Board of

---

[11] *Appeal of Michener*, 115 A.2d 367 (Pa. 1955), predates the hardship test as it is now applied. *See City of Phila. Zoning Bd. v. Earl Scheib Realty Corp.*, 301 A.2d 423, 426 (Pa. Cmwlth. 1973) (combining rules from *Peirce v. Zoning Bd. of Adjustment*, 189 A.2d 138 (Pa. 1963); *Forest Hills Borough Appeal*, 187 A.2d 166 (Pa. 1963); *Ferry v. Kownacki*, 152 A.2d 456 (Pa. 1959); and *Zoning Bd. of Adjustment v. Koehler*, 278 A.2d 375 (Pa. Cmwlth. 1971)).

Adjustment but only, at best, a call upon the Township Commissioners to re-zone the district.

*Id*. at 371-72.

Several years later, in *English v. Zoning Board of Adjustment of the Borough of Norristown*, 148 A.2d 912 (Pa. 1959), our Supreme Court reversed the grant of a variance allowing an applicant to operate a beauty salon and shop in a residentially zoned district. *Id*. at 913-15. In doing so, the Court again warned zoning boards against overreaching:

> The legislative bodies must be alert to the developments which are constantly occurring in their communities which increase or decrease the commercial, residential or industrial desirability of particular areas. It is the responsibility of the proper legislative authorities to keep abreast of the changes so that zoning ordinances do not become obsolete but realistically reflect the changes which occur in the community. Even though the temptation be great if the legislative body fails to act, still the legislative function does not pass to the zoning board of adjustment.

*English*, 148 A.2d at 914-15.

Similarly, in *Hill District Project Area Committee, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh*, 638 A.2d 278 (Pa. Cmwlth. 1994), this Court determined the applicant had not demonstrated entitlement to a variance because the conditions complained of applied to the entire area and were not particular to the applicant's property:

> Nothing less than a showing of hardship that is special and peculiar to the applicant's property will empower the [b]oard to grant a variance. If there is a general hardship, the situation should be remedied by revision of the general zoning regulations, not by the grant of a special privilege to single owners. Even if an area may be in need of a complete rezoning classification, such does not permit the

13

grant of a variance to a single property. The conditions to which [the applicant's] property were subject did not constitute any hardship which especially affected the property; on the contrary, they applied to the entire area.

*Id.* at 281.

This Court's analysis in *SOSSNA* is distinguishable. There, the applicant acquired property in 1999. When he sought a use variance in 2008, the property had been listed for sale for its zoned industrial use for five years without success. 54 A.3d at 121. The zoning board granted the variance request based on the prohibitive expense of renovations to conforming use and a finding of valuelessness based on the applicant's inability over five years to sell the property for industrial use (the second and third alternatives in the hardship test). *Id.* at 119 & 121-22. In affirming the grant of a variance, we "specifically acknowledged that a sustained, but unsuccessful attempt to sell property constitutes evidence that the property lacks value for any permitted use." *Id.* at 122. Based on the applicant's five-year-long attempt and failure to sell the property for industrial use, we recognized the board's role as the arbiter of credibility and facts and found its conclusion of an unnecessary hardship (the third alternative of the hardship test) was reasonable. *Id.*[12]

*Liberties Lofts* is likewise distinguishable. There, the applicant sought a use variance to construct a mixed residential and commercial structure and garage in a mixed industrial-commercial zoning district. 182 A.3d at 515. The plans required demolition of a deteriorated former industrial building on the property that had been mostly vacant for some time. *Id.* at 515, 519. A real estate broker opined

---

[12] The *SOSSNA* zoning board's finding concerning the second element of the hardship test, a showing of prohibitive expense to conform the property for a permitted use, was not substantively addressed in this Court's decision.

that the property was not rentable[13] for industrial use in its current condition. *Id*. at 517. Moreover, the applicant's representative testified that even if the current building was renovated, no tenant would "pay any kind of market rent that would make this project work" as industrial property. *Id*. at 517. Therefore, he stated the property, in its current zoning, was "valueless. There's no value." *Id*.

The zoning board granted the variance on the basis that the property was valueless as currently zoned and could only be converted to a permitted use at a prohibitive expense (the second and third elements of the hardship test). *Id.* at 518, 534. The board explained that in light of the dilapidated status of the current building and the contemporary nature of the area, which was transitioning from industrial to commercial and residential uses, sufficient hardship had been established. *Id*. at 518-19.

This Court affirmed, emphasizing the deference due the local zoning board in light of its "expertise in and knowledge of local conditions." *Id.* at 530; *see also Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 9 (Pa. Cmwlth. 2015) (same). We particularly focused on the zoning board's consideration of the existing building's poor rental history and prospects, its incompatibility with the neighborhood's contemporary residential and commercial character, and the applicant's project design geared toward the current state of the neighborhood. *Liberties Lofts*, 182 A.3d at 532-34. The board's grant of a use variance was supported by the record and valid in light of *SOSSNA*'s recognition that changes in

---

[13] *Liberties Lofts* resembles this case in that the property's owner had difficulty renting rather than selling. 182 A.3d at 517. The analysis for establishing valuelessness as a hardship sufficient to support a use variance remains essentially the same whether the issue is sales or rental. *See also Soc'y Created to Reduce Urban Blight (SCRUB)*, 831 A.2d, 1255, 1262 (Pa. Cmwlth. 2003) ("There is not a unique problem with the property undermining its rental value.").

a property's surrounding area may contribute to the finding of requisite hardship. *Id*. at 534-35.

As the foregoing decisions illustrate, in considering whether an applicant has demonstrated the requisite hardship, the changing character of the surrounding neighborhood and the applicant's ability (or lack thereof) to sell or rent the property for its current designated use are relevant. *Liberties Lofts*; *SOSSNA*. In this regard, the zoning board's knowledge of local conditions is entitled to significant deference on appeal. *Liberties Lofts*; *Tidd*. However, the ultimate inquiry remains whether the applicant's property has a unique character or defects that cause the hardship. *See, e.g.*, *Fairview Township.* Where changing circumstances in the area as a whole suggest that rezoning by the local legislative body is warranted, the local zoning board exceeds its authority by granting individual variances. *See English*; *Michener*; *Hill District Project*.

Both *SOSSNA* and *Liberties Lofts* involved zoning designations specific to the properties at issue due to their particular positions in the midst of other properties that were successfully zoned another way. Due to the properties' particular and now-archaic zoning designations, they became valueless over time and therefore saddled with unnecessary hardships.

Johnston's property, however, is not zoned one way in an area zoned another way. Rather, it lies within a cluster of properties all zoned for ground floor commercial use, and with all suffering the same hardship of low tenant interest. R.R. at 54a-55a, 64a-65a, 70a-71a, 105a, & 110a-18a. In fact, Raftery, the Borough Vice President, acknowledged as much: "[I]n our Borough, [] I believe that we need to look at some of these properties that have these form[s] of issues and consider relief." R.R. at 135a.

16

This matter is thus analogous to *English*, *Michener*, and *Hill District Project*, where the hardship was general and common to the entire area subject to the same zoning restrictions and not "special and peculiar" to one property. *Hill District Project*, 638 A.2d at 281. The appropriate remedy in such circumstances, as those decisions point out, is not the grant of a variance to a single property, but local legislative rezoning of the area as a whole.

The Board rejected Johnston's assertion of uniqueness based on her property's residential character, and the Board's knowledge of the local conditions warrants deference from this Court. Board Decision; R.R. at 141a; *Liberties Lofts*, 182 A.3d at 530; *Tidd*, 118 A.3d at 9. We find no error in the Board's conclusion that Johnston failed to establish the "valuelessness" form of hardship. *See* Board Decision at 3-4; R.R. at 142a-43a. Johnston's requested use variance was therefore properly denied.

## Conclusion

Based on the foregoing analysis, we affirm the trial court's order.

_____
CHRISTINE FIZZANO CANNON, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Brenda A. Johnston, | : | |
|        Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| East Greenville Borough | : | No. 376 C.D. 2020 |
| Zoning Hearing Board | : | |

# O R D E R

AND NOW, this 16th day of April, 2021, the December 16, 2019 Order of the Court of Common Pleas of Montgomery County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge